Nos. 80,189
80,213

STATE OF KANSAS, *Appellee*, v. FRANK J. WILKINS, *Appellant*.

(7 P.3d 252)

258

Opinion filed June 2, 2000.

*Nicholas M. St. Peter*, of Herlocker, Roberts & St. Peter, L.L.C., of Winfield, and *Timothy A. Showalter*, of Arkansas City, argued the cause, and were on the briefs for appellant, and *Frank J. Wilkins*, appellant, was on the brief pro se.

*Gary L. Foiles*, county attorney, argued the cause, and *James R. Spring*, deputy county attorney, and *Carla J. Stovall*, attorney general, were on the brief for appellee.

The opinion of the court was delivered by

ABBOTT, J.: This is a direct appeal by the defendant, Frank J. Wilkins, from his convictions for burglary and attempted theft in case No. 96CR460 and conspiracy to commit aggravated robbery, aggravated burglary, kidnapping, and aggravated robbery in case No. 96CR506.

Following his convictions in the robbery case, Wilkins filed a motion to dismiss the burglary case on double jeopardy grounds pursuant to K.S.A. 21-3108(2)(a), which the trial court denied. For purposes of appeal, the two cases were consolidated. The Court of Appeals affirmed Wilkins' convictions in the burglary case and dismissed the substantive arguments on appeal in the robbery case because Wilkins' notice of appeal only stated that he was appealing from his "judgment of sentence." Wilkins filed a petition for review with this court, which we granted.

Shortly after midnight on October 25, 1996, law enforcement officers heard noises coming from a phone drop at Sheldon's Pawn Shop in Arkansas City, Kansas. The officers were unable to determine that any windows or doors at the pawn shop had been entered. Bill Sheldon, owner of the pawn shop, arrived and opened the door. Wilkins and Orval Ray were in the pawn shop. One of them was standing on top of a counter directly under a hole that had been cut in the roof.

Sheldon told the officers that they should "just go ahead and shoot them." This statement is of some importance because it made Wilkins and Ray angry and was part of the conspiracy charge in the robbery case and was a motivating factor for the robbery.

Pending trial for the burglary case, Wilkins and Ray were released on bond. Before being released on bond, Wilkins and Ray made incriminating statements to three inmates who testified at trial. Wilkins and Ray told the three inmates that they were in jail for burglarizing the pawn shop and that they had plans to rob the Sheldons when they were released.

While released on bond, Wilkins and Ray went to the Sheldons' house and forced their way inside. They tied Mrs. Sheldon with a cord and tape, and stole jewelry, guns, cash, and travelers checks.

The State brought separate charges for the two incidents. No attempt was made to consolidate the two cases for trial. The robbery case, which occurred while Wilkins and Ray were released on bond for the first case (pawn shop burglary) went to trial first. The jury found Wilkins guilty of conspiracy to commit aggravated robbery, aggravated burglary, kidnapping, and aggravated robbery. Wilkins moved to dismiss the earlier pawn shop burglary case, maintaining that the burglary case violated Kansas and federal constitutional prohibitions against double jeopardy.

Wilkins raises two issues on appeal. He argues that (1) the trial court erred when it denied his motion to dismiss the burglary case on double jeopardy grounds pursuant to K.S.A. 21-3108(2)(a), as the State had presented evidence of the burglary case during the robbery case, and (2) the Court of Appeals erred in dismissing the substantive robbery trial issues raised by Wilkins in his brief but not specifically addressed in his notice of appeal.

Wilkins argues that because evidence of the pawn shop burglary was presented by the State during the robbery case, the trial court erred in denying his motion to dismiss the burglary case in violation of his right to be free from double jeopardy.

K.S.A. 21-3108(2)(a) governs this issue and sets forth:

"(2) A prosecution is barred if the defendant was formerly prosecuted for a different crime, or for the same crime based upon different facts, if such former prosecution:

(a) Resulted in either a conviction or an acquittal and the subsequent prosecution is for a crime or crimes of which evidence has been admitted in the former prosecution and which might have been included as other counts in the complaint, indictment or information filed in such former prosecution or upon which the state then might have elected to rely."

K.S.A. 21-3108 is a codification of the double jeopardy rule and contains two parts, the "compulsory joinder" rule and the "identity of elements" rule. *In re Berkowitz*, 3 Kan. App. 2d 726, 741, 602 P.2d 99 (1979). Wilkins' argument on this issue concerns only the compulsory joinder rule.

Under the compulsory joinder rule, if evidence is admitted of an offense not contained in the charge, later prosecution of that offense is barred if it could have been included as an additional count in the first prosecution. *Berkowitz*, 3 Kan. App. 2d at 742.

The object of the compulsory joinder rule is "simply to prevent the prosecution from substantially proving a crime in a trial in which that crime is not charged, and then prosecuting the defendant" in a subsequent trial using evidence presented in the earlier trial. 3 Kan. App. 2d at 743. The compulsory joinder rule furthers the constitutional guarantee against multiple trials and is not concerned with multiple convictions or multiple punishments for separate offenses. 3 Kan. App. 2d at 743.

Kansas courts utilize a three-prong test when determining whether the compulsory joinder rule applies. As Chief Judge Foth stated in *Berkowitz*:

"For the Kansas statute to bar a prosecution under the circumstances present in this case three elements must coalesce: (1) The prior prosecution must have resulted in either a conviction or an acquittal; (2) evidence of the present crime must have been introduced in the prior prosecution; and (3) the present crime must be one which could have been charged as an additional count in the prior case." 3 Kan. App. 2d at 743.

In the present case, the parties agree that the first prong of the *Berkowitz* test has been met. Although the State argues that the third prong has not been met, as the State would have had to amend the robbery case to include the burglary case, the fact remains that there was nothing stopping the State from doing so. Although the events took place on different nights, the State could have brought the cases together. The third prong of the *Berkowitz* test has been met. The sole contention at issue in this case is, therefore, whether the evidence presented in the robbery case was sufficient to trigger application of the second prong of the *Berko-*

*witz* test. If so, the trial court erred in denying Wilkins' motion to dismiss the burglary case.

Wilkins argues that the "State presented the heart of their burglary case at the robbery trial" and that the "State did substantially prove the burglary and attempted theft at the first trial." The State admits that "some evidence of the pawn shop burglary was introduced" in the robbery trial pursuant to K.S.A. 60-455.

Burglary is defined in K.S.A. 21-3715 as "knowingly and without authority entering into or remaining within any: . . . (b) building, manufactured home, mobile home, tent or other structure which is not a dwelling, with intent to commit a felony, theft or sexual battery therein."

The Court of Appeals held that the evidence presented in the robbery case did not substantially prove the burglary case and stated:

"The above testimony merely establishes that Wilkins and Ray were present in the pawn shop. The hole in the roof and the hour imply that they did not have authority to be in the pawn shop. Similarly, Mr. Sheldon's statement that the police should just shoot Wilkins and Ray implies that Sheldon did not give them authority to be in the pawn shop. However, the evidence does not prove the remaining element of burglary, that is, that Wilkins and Ray intended to commit a 'felony, theft or sexual battery therein.'

"Although Wilkins and Ray breaking into a *pawn shop* implies that they intended to commit a theft, it is not inconceivable that the two intended to vandalize the establishment or commit some other misdemeanor. Because the State's evidence did not *substantially prove* burglary as opposed to some other offense, Wilkins' argument fails."

Lieutenant Ron Fleig, of the Arkansas City Police Department, testified as follows:

"Q. Do you recall where you were at approximately 31 minutes after midnight on October 25, 1996?

"A. Yes.

"Q. Where were you?

"A. I was sitting in the office of the dispatch at the police department.

"Q. Okay. Did you hear anything unusual at that time?

"A. I heard what sounded like a banging sound coming over one of the phone drops.

"Q. Now, what is phone drop?

"A. A phone drop is a speaker at one end in the police department and it's connected to a phone at one of the businesses on the other end. In this situation the phone located on the other site was located in Sheldon's Pawn Shop.

"Q. Are these phone drops only activated on the nonbusiness hours of the businesses?

"A. Yes.

"Q. Upon hearing this banging noise, what did you do?

"A. I advised the dispatcher to send Corporal Scott to provide assistance to me, and we drove to Sheldon's Pawn Shop to determine what the banging sound was.

. . . .

"A. The first thing that we did is we tried to determine if there were any windows broken or any doors that had been pried open. When we didn't find any evidence outside the building that any entry had been made, I had the dispatcher contact the owner of the building to see if he could come to that location with his keys to let us go inside.

. . . .

"A. Officer Arnett was the first one to go inside. And there is a room in the pawn shop that is to the west of the entry way, and Officer Arnett found a male black suspect standing on the countertop inside that room.

"Q. And how many individuals were there totally in the pawn shop that had no authority to be there?

"A. Two.

. . . .

"Q. Who were these two individuals?

"A. We learned that one was Orval Ray and the other was Frank Wilkins.

. . . .

"Q. Now, at some point in time did Mr. Sheldon make any comments concerning about what should be done with these two individuals?

"A. He said something to the effect, just go ahead and shoot them.

. . . .

"A. After we secured the two suspects, we noticed that there was a hole in the roof. Directly above where Officer Arnett found the first suspect standing on the countertop, there was a hole in the roof."

The following testimony was elicited from Ricky Potter who had been in jail with Wilkins following the burglary of the Sheldon Pawn Shop:

"Q. Now, did he indicate why he was in jail at this time that he was talking to you?

"A. Yeah, he said that he burglarized the pawn shop.

"Q. Okay. Did he indicate any animosity or anger towards Mr. Sheldon at all?

"A. Not other than kind of, you know, it pissed him off the way Sheldon walked in when they caught them in the place."

Sydney Bryant, who was also in jail with Wilkins, testified that Wilkins and Ray "had came in on another case, a burglary case, and they talked about what they was going to do when they got out, or on bond." Another inmate at the jail, Darrell Maruska, testified that he met Wilkins and Ray when they "came in on a burglary charge." Maruska further testified that Wilkins and Ray "was mad because they got busted in his pawn shop, and they said they ought to go back and kill him."

The "identity of elements" or "same evidence" rule does have some limited application to the compulsory joinder rule. Where the same evidence is common to two or more distinct offenses but standing alone does not substantially prove them, its use in one prosecution will not bar a subsequent prosecution for a different offense and its use therein. *Berkowitz*, 3 Kan. App. 2d at 743.

In order for K.S.A. 21-3108(2)(a) to apply, the evidence presented in an earlier trial needs to be sufficient to support a conviction sought in a later trial. There needs to be more than a mere scintilla of evidence. A slight or passing reference to evidence will not be enough to trigger the application of K.S.A. 21-3108(2)(a). See Spring, *The Effect of Former Prosecutions: Something Old and Something New Under Kan. Stat. Ann. Sec. 21-3108*, 9 Wash. L. J., 179, 185 (1970) (noting that evidence must be sufficient to support conviction in subsequent prosecution). The fact that some evidence used in the first trial is also used in the second trial does not necessarily bar prosecution. *State v. Edgington*, 223 Kan. 413, 417, 573 P.2d 1059 (1978). The question is whether the second crime was proved by the admission of evidence of the second crime in the first trial. *State v. Barnhart*, 266 Kan. 541, 544, 972 P.2d 1106 (1999). To determine this, we adopt a test similar to that used when challenging the sufficiency of evidence on appeal. In order to satisfy the second prong of the *Berkowitz* test, a defendant must show that the evidence presented at the first trial, when viewed in a light most favorable to the defendant, would lead a rational factfinder to find the defendant guilty beyond a reasonable doubt of the crimes in the second trial.

A review of the application of K.S.A. 21-3108(2)(a) and the *Berkowitz* test is warranted. In *Barnhart*, the defendant was convicted

of various drug charges relating to the possession of cocaine, methamphetamine, and other drug paraphernalia in 1995. During the trial, evidence concerning a 1996 arrest of a similar nature was presented pursuant to K.S.A. 60-455 to show intent, knowledge, or absence of mistake or accident. The defendant subsequently moved to dismiss the 1996 charges because evidence concerning the charges had been presented in his 1995 trial. The evidence included: (1) the testimony of Officer Cross regarding his 1996 arrest of the defendant and the recovery of evidence including drug paraphernalia, a firearm, and methamphetamine; (2) the testimony of Deputy Guzman regarding the chain of custody of the evidence that Officer Cross recovered; and (3) the results of laboratory reports. The trial court granted the motion to dismiss and the State appealed. The State argued that 1996 charges were not proved in the 1995 case. This court held that the second *Berkowitz* prong was satisfied and held that the evidence presented in the first trial sufficiently precluded the second trial against the defendant as the second crime was "proved by the admission of evidence of the second crime in the first trial." 266 Kan. at 544.

In the present case, testimony concerning the burglary case was more than a mere passing reference. Officer Fleig testified that Wilkins was found in the pawn shop and had broken in through a hole in the roof. Three different cell mates testified that Wilkins and Ray said they were in jail for burglary. The question is whether this evidence would have been sufficient to convict Wilkins of burglary, thereby barring the burglary trial pursuant to K.S.A. 21-3108(2)(a). We hold that it was. The testimony revealed that Wilkins was in the pawn shop without the authority of the owner and that he had broken in through a hole in the ceiling. There was no direct evidence presented to the jury in the robbery trial that Wilkins had an intent to commit a "felony, theft, or sexual battery therein." Intent may be inferred, however, from the circumstances and does not need to be directly proven. See *State v. Graham*, 244 Kan. 194, 206, 768 P.2d 259 (1989) (intent may be proven by circumstantial evidence); *State v. Seelke*, 221 Kan. 672, 680, 561 P.2d 869 (1977) (intent is factual inference that is within province of the jury).

In *State v. Harper*, 235 Kan. 825, 685 P.2d 850 (1984), this court considered a similar issue where the defendants set off a silent alarm in a school. This court felt it was important that the building was kept locked at night, that there was no evidence of any damage, destruction, or vandalism within the building, and that the building contained valuable personal property. The court reasoned:

"Assume that an accused, a lone backpacker in a rural area, ignores a prominently posted 'No Trespassing' sign and steps inside the open door of an empty barn in order to gain shelter from a sudden downpour at midday. Such facts, standing alone, could not reasonably give rise to an inference that the trespasser entered with theft in mind. Assume, however, that the accused breaks the lock on a rear door and enters a pharmacy or a jewelry store at midnight, and shortly thereafter is found concealing himself inside the store. Is not an inference of intent to commit a theft logical?

"The intent with which an entry is made is rarely susceptible of direct proof; it is usually inferred from the surrounding facts and circumstances. See 12A C.J.S., Burglary §§ 85 and 104; 13 Am. Jur. 2d, Burglary §§ 25 and 52; 3 Underhill's Criminal Evidence § 717 (5th ed. 1957). The manner of the entry, the time of day, the character and contents of the building, the person's actions after entry, the totality of the surrounding circumstances, and the intruder's explanation, if he or she decides to give one, are all important in determining whether an inference arises that the intruder intended to commit a theft.

"In 3 Wharton's Criminal Law § 338 (14th ed. 1980), the author states:

'At common law, a defendant who breaks and enters into a dwelling house must, at the time he does so, intend to commit a felony therein. It is not necessary that the felony intended be committed. Nor does it matter why the intended felony was not committed, as where the defendant's presence was discovered, he was stopped by police officers, or he was otherwise unable to commit the felony.

'If no felony be committed, and no satisfactory explanation for the break and entry is apparent, the jury may infer that the defendant intended to commit larceny.' pp. 214-217.

"Perhaps the leading Kansas case on intent, in connection with burglary, is *State v. Gatewood*, 169 Kan. 679, 221 P.2d 392 (1950). Syllabus ¶¶ 2, 3 and 4 read as follows:

'In a prosecution for burglary of a dwelling house of another in the nighttime the "intent to commit some felony, or any larceny therein" is a necessary element of burglary in the first degree under G.S. 1935, 21-513.' Syl. ¶ 2.

'Intent is a state of mind existing at the time an offense is committed and may be shown by acts, circumstances and inferences reasonably deducible therefrom and need not be established by direct proof.' Syl. ¶ 3.

'In the absence of proof of other intent, or an explanation of an unlawful breaking and entry into the dwelling house of another at night, the inference is the

intent of the intruder was to commit larceny rather than some other felony.' Syl. ¶ 4.

"In the opinion, Justice Wedell, speaking for a unanimous court, said:

'Appellant next argues there was no evidence appellant broke into the dwelling "with intent to commit *larceny*." . . . It may be conceded there was no direct proof of appellant's intent. It is also true the statute makes "intent to commit some felony, or any larceny therein" an element of the offense of burglary in the first degree.

'Intent is a state of mind existing at the time a person commits an offense. If intent must have definite and substantive proof it would be almost impossible to convict, absent facts disclosing a culmination of the intent. The mind of an alleged offender, however, may be read from his acts, conduct and inferences reasonably to be drawn therefrom. Frankness requires it be stated there is not complete unanimity of opinion among the courts relative to whether the intent to commit *larceny*, in connection with a burglary charge, must be affirmatively shown to exist as distinct from some other offense that might have been intended. In *Simpson v. State of Florida*, 81 Fla. 292, 87 S. 920, it was held such intent must be affirmatively shown by direct or circumstantial evidence. In *State v. Riggs*, 74 Minn. 460, 77 N.W. 302, relied on by appellant, a divided court held the evidence insufficient to disclose an intent to commit larceny. That decision is discussed in our case of *State v. Van Gilder*, 140 Kan. 66, 33 P.2d 936. There was some positive evidence in the Minnesota case the defendant did not intend to steal but to buy liquor at the place he entered. In the *Van Gilder* case we held:

"In a prosecution for burglary, where the breaking and entering was clearly established and not controverted, the intent to steal may be sufficiently established by inference fairly deducible from all the circumstances and need not be established by direct proof." (Syl. ¶ 1.)

'For purposes of accuracy it should be conceded there was some rather strong circumstantial evidence of intent to commit larceny in our *Van Gilder* case. In the opinion we cited *State v. Woodruff*, 208 Ia. 236, 225 N.W. 254. Numerous cases are cited in a well considered opinion in the Iowa case holding the clear weight of authority to be that an unexplained breaking and entering of a dwelling house in the nighttime is in itself sufficient to sustain a verdict that the breaking and entering was done with the intent to commit *larceny* rather than some other felony. The Iowa case contains quotations from some of the many cases so holding, which need not be repeated here. The fundamental theory upon which the inference of intent to commit *larceny* is based, absent evidence of other intent or an explanation for breaking and entering, is that the usual object or purpose of burglarizing a dwelling house at night is theft. We are impressed with the soundness of the rule.

'Moreover in the instant case we cannot say there were no circumstances from which the jury reasonably might infer appellant intended to commit larceny. Appellant sought to make entry through various doors and windows. He used his flashlight on the screen porch. It is reasonable to infer he found nothing there he

desired. He then flashed the light all over the adjoining kitchen. It reasonably may be inferred he was endeavoring to ascertain whether the kitchen, or any other portion of the dwelling he could see, contained something he desired. He may have seen something. Finding entrance into the kitchen impossible from the screen porch he made attempts to enter at other places. We think it cannot be said the verdict must be set aside on the ground a prima facie case of intent to commit larceny was not established.' (Emphasis in original.) 169 Kan. at 683-85.

"Other courts have inferred intent from the surrounding circumstances, where the entry was unexplained, even though the entry or attempted entry was into commercial buildings. For example, in *Lisenko; Stepien v. State*, 265 Ind. 488, 355 N.E.2d 841 (1976), the evidence disclosed that at about 4:00 o'clock in the morning a silent alarm was set off in a building occupied by the Indiana Carton Company, South Bend, Indiana. Police officers arrived at the scene six minutes after the alarm sounded. They discovered that a door had been pried open, and upon entering the building with a police dog, an officer found two suspects with their hands up stating that they 'gave up.' Two pry bars were discovered on the floor two or three feet inside the door. On the element of intent, the court said:

'The Appellants' sufficiency arguments assert that the evidence in this case failed to establish the second element, intent. We do not agree. The evidence at trial established that entry to the building in question was effected by prying open a locked steel door at about 4:00 a.m. No employees of the business were present in the building. The Appellants offered no explanation for their presence. In the absence of evidence that this forced entry was made with some lawful intent, we think that the intent to commit a felony may be reasonably inferred from the time, force, and manner in which the entry here was made. In addition, the Appellants' statement to police that they "gave up" evidenced a consciousness of guilt from which the jury could further infer a felonious purpose. An inference of guilt may be drawn therefrom the same as if the Appellants had fled.

'While the State must sustain its burden of proof on each element of an offense charged, some of these elements may be proven by circumstantial evidence and the logical inferences therefrom. *Kondrup v. State*, (1968) 250 Ind. 320, 235 N.E.2d 703. Because intent "is a mental state of the actor, the trier of fact must resort to reasonable inferences based upon examination of the surrounding circumstances to reasonably infer its existence." *Farno v. State*, (1974) 159 Ind. App. 627, 308 N.E.2d 724 at 725. As stated in my dissenting opinion in *Crawford v. State*, (1968) 251 Ind. 437 at 446, 241 N.E.2d 795 at 800, not to permit such an inference under circumstances such as here:

". . . penalizes efficient methods of law enforcement, such as alarm systems. Police officers promptly alerted, must wait until the intruder has first seized property or committed a rape or some other felony before the intruder may be convicted of a felony. A home owner who finds an intruder in his home at night will be surprised to learn that such a law-breaker cannot be convicted of a felony until he has first seized property or raped somebody, even though he can make no logical

explanation of why he is there and even though he may be hiding or attempting to flee."

To the extent that *Crawford v. State, supra,* conflicts with the holding of this case, it is overruled.' 265 Ind. at 490-91." *Harper,* 235 Kan. at 828-31.

In *Barnhart,* 266 Kan. at 549, we said:

"We have examined all the cases cited by both parties and have no quarrel with them. As we view K.S.A. 21-3108(2)(a), the legislature intended that in cases such as the one before us the State has two choices. It can: (1) either consolidate the two cases or charge all the crimes in one charging instrument whereby evidence of all the crimes charged would be admissible; or (2) the State can elect to have separate trials and not use evidence of the second offense in the first trial. This statutory construction does not disadvantage either the State or the accused and conserves time and the expense required to present the same evidence in two trials.

"The State did not comply with K.S.A. 21-3108(2)(a). Therefore, we find no error in the trial court's dismissal of charges for possession of drug paraphernalia, a firearm, and methamphetamine on the ground of double jeopardy."

We hold that the burglary evidence presented in the first trial, when viewed in a light most favorable to Wilkins, would have led a rational jury to convict him of burglary and, therefore, it was error for the trial court to deny the motion to dismiss the burglary charge pursuant to K.S.A. 21-3108(2)(a).

Wilkins next argues that the Court of Appeals erred in dismissing the substantive trial issues raised by him in the robbery case when it held that his notice of appeal, which stated that he was appealing the "judgment of sentence," did not sufficiently encompass the substantive trial issues raised on appeal.

The Court of Appeals dismissed the substantive appeal issues argued in the robbery case because of the wording of Wilkins' notice of appeal. The Court of Appeals stated:

"Next, Wilkins raises several issues regarding trial errors from his robbery trial. However, in appealing from his robbery conviction, Wilkins' notice of appeal states: 'Notice is hereby given that the Defendant appeals from the *judgment of sentence* made by the Court herein to the Court of Appeals of the State of Kansas.'

"In his brief, Wilkins argues that the trial court erred in admitting evidence against him, in instructing the jury, and in denying his motion to sever his trial from that of his codefendant, Ray. However, as set out above, Wilkins' notice of appeal is limited to his sentence. Therefore, this court has no jurisdiction to consider the substantive issues raised in his brief. [Citations omitted.] Although a

defendant's notice of appeal is to be construed broadly, '[u]nder the relevant Kansas statutes, case law, and Supreme Court Rules, an appellant is bound by the issues raised in the notice of appeal.' [Citation omitted.] In the instant case, no amount of liberal construction broadens the scope of the language in Wilkins' notice of appeal to encompass the substantive issues raised in his brief." (Emphasis added.)

We recently visited the notice of appeal issue in *State v. Boyd*, 268 Kan. 600, 999 P.2d 265 (2000). In *Boyd*, we held that a notice of appeal in which the defendant stated that he was appealing his "conviction" was sufficient to give the Court of Appeals jurisdiction to consider the defendant's substantive trial errors and stated:

"As with the advent of notice pleading, the appellate process was greatly simplified in 1963. It is clear that by the legislative changes in 1963, the legislature intended it to be easier to take an appeal to an appellate court in Kansas. The process was simplified, with the goal being to afford every criminal defendant at least one appeal. K.S.A. 1999 Supp. 60-2103 was originally drafted, and remains virtually the same today, to only require an appellant to 'designate the judgment or part thereof appealed from.' There is no statute or court rule which expressly requires an appellant to set forth all of the errors that will be contested on appeal in the notice of appeal. When the legislature repealed G.S. 1949, 60-3306, and 60-3826 and enacted K.S.A. 60-2103, it was a signal that it was no longer necessary to specify each and every issue to be contested on appeal in the notice of appeal.
. . . .
" . . . The notice of appeal should not be overly technical or detailed. The notice of appeal is not a device to alert the parties to all possible arguments on appeal. That is the purpose and function of the docketing statements and briefs filed by the parties. The briefs should list all of the issues to be argued by the parties and should contain the arguments and authorities for each issue. See Supreme Court Rules 6.02 and 6.03 (1999 Kan. Ct. R. Annot. 33, 35). The State does not generally take any significant action when receiving a notice of appeal. The fact that a notice may generally state that the defendant is appealing his 'conviction' does not harm or even affect the State in any appreciable way. The State determines the issues to be argued by reading the docketing statement and brief filed by the appellant and is given an opportunity to respond by filing its own brief. Whether a party has detailed its arguments in the notice of appeal does not affect the State's practice or its appellate strategy." 268 Kan. at 604-06.

In *State v. Griffen*, 241 Kan. 68, 734 P.2d 1089 (1987), this court addressed the notice of appeal issue and focused the analysis on whether the State had been prejudiced by the defendant's notice of appeal which merely stated that the defendant was appealing

from "his conviction and sentence" when the defendant raised other substantive issues. This court stated:

"We find the State's jurisdictional attack to be without merit. This Court is the final arbiter in determining whether statutory jurisdictional requirements have been met in any case filed in the courts of Kansas. We have often recognized that jurisdiction in any action on appeal is dependent upon strict compliance with the statutes. However, when there is a valid controversy whether the statutory requirements have been complied with, we are required to construe those statutes liberally to assure justice in every proceeding. [Citations omitted.] There is no showing that the notice of appeal misled the State or that anyone was surprised or prejudiced by the issues on appeal. We conclude the notice of appeal was sufficient to vest jurisdiction in this court." 241 Kan. at 69-70.

See also *State v. Ransom*, 268 Kan. 653, 999 P.2d 272 (2000) (State was not prejudiced by notice of appeal and notice of appeal was sufficient to give Court of Appeals jurisdiction over case).

In the present case, Wilkins' notice of appeal stated that he was appealing from the "judgment of sentence." The State contends the language in the notice limits Wilkins to raising issues regarding his sentencing only. Wilkins asserts that the notice of appeal should have read "judgment *and* sentence" and that the use of the word "*of*" was a typographical error. Wilkins further states that "it is clear from an overall review of this entire Appellate File that it was always the Defendant/appellant's intention to challenge the judgment rather than his sentence." In fact, the sentence itself was not appealable in this case.

Given that the notice of appeal "should not be overly technical or detailed"; that the "State does not generally take any significant action when receiving a notice of appeal"; that the typographical error in this case "does not harm or even affect the State in any appreciable way"; that the State has not shown surprise or prejudice; that this court is to construe K.S.A. 60-2103(b) liberally to assure justice in every proceeding; and that actions should be just, speedy, and inexpensively determined, we hold that the "judgment of sentence" language found in Wilkins' notice of appeal sufficiently conferred jurisdiction on the Court of Appeals to determine the substantive issues raised in the robbery case.

The convictions in the burglary case, No. 96CR460, are reversed. The Court of Appeals' dismissal of the substantive issues in the robbery case, No. 96CR506, are reversed, and the case is remanded to the Court of Appeals for further proceedings.