IN THE SUPREME COURT OF THE STATE OF KANSAS

No. 106,409

STATE OF KANSAS,
*Appellee*,

v.

MICHAEL JORDAN,
*Appellant*.

SYLLABUS BY THE COURT

The compulsory joinder rule set out in K.S.A. 21-3108(2)(a) is not a bar to a second prosecution unless evidence presented in an earlier prosecution was sufficient to convict of the crime or crimes charged in the second prosecution.

Review of the judgment of the Court of Appeals in an unpublished opinion filed October 5, 2012. Appeal from Sedgwick District Court; DAVID J. KAUFMAN, judge. Opinion filed March 25, 2016. Judgment of the Court of Appeals affirming the district court is affirmed. Judgment of the district court is affirmed.

*Randall L. Hodgkinson*, of Kansas Appellate Defender Office, argued the cause and was on the brief for appellant.

*Julie A. Koon*, assistant district attorney, argued the cause, and *Nola Tedesco Foulston*, former district attorney, and *Derek Schmidt*, attorney general, were with her on the brief for appellee.

1

The opinion of the court was delivered by

BEIER, J.:  Defendant Michael Jordan appeals his conviction of felony theft by deception, arguing that the compulsory joinder rule of K.S.A. 21-3108(2)(a) barred his prosecution. We affirm Jordan's conviction.

FACTUAL AND PROCEDURAL BACKGROUND

The State charged Jordan in two separate cases for conduct occurring in April 2010.

That month Jordan contacted Joshua Smith about a Mercedes he had for sale. Smith gave Jordan a key so that Jordan could take the car for a test drive, and Jordan never returned. Smith reported the car stolen.

Nine days later, Jordan was pulled over while driving the Mercedes in Wichita. After stopping the car, Jordan jumped out and ran, but he was quickly apprehended and arrested. Police eventually learned that the license plate on the car did not belong on it and that the plate had been reported stolen a few days earlier.

In Jordan's first case, the State accused him of committing four traffic offenses. The case went to bench trial on stipulated facts, which included a police report filed after Jordan was arrested. The district court judge found Jordan guilty of three of the four charged offenses.

In Jordan's second case, the one before us on appeal today, he faced two charges, one for theft of the Mercedes by deception and one for intentionally obtaining control over the stolen license plate. Before trial, Jordan's defense counsel moved to dismiss

2

under K.S.A. 21-3108(2)(a), the compulsory joinder rule, because of the admission of the police report into evidence in the trial of the first case. The district judge denied the motion. After trial to the bench, Jordan was found guilty of theft by deception but was acquitted on the license plate charge.

On appeal to the Court of Appeals, Jordan challenged the district judge's refusal to dismiss. The panel affirmed. See *State v. Jordan*, No. 106,409, 2012 WL 5869571 (Kan. App. 2012) (unpublished opinion). The panel relied primarily on this court's decision in *State v. Wilkins*, 269 Kan. 256, 263, 7 P.3d 252 (2000), which held that K.S.A. 21-3108(2)(a) does not apply unless "the evidence presented in an earlier trial [was] sufficient to support a conviction sought in a later trial." The panel recognized—in response to Jordan's argument—that the statute's text did not explicitly require "sufficient evidence" to have been introduced in a prior trial, but the panel considered itself duty bound to follow this court's precedent. *Jordan*, 2012 WL 5869571, at *2. According to the panel, at the trial on the traffic offenses, "the only element for theft by deception that was met by the police report was that Smith owned" the Mercedes; there was no evidence of Jordan's intent or deceitfulness, of the car being valued between $1,000 and $25,000, or of the date or place of the theft. 2012 WL 5869571, at *3.

DISCUSSION

This case requires us to interpret or construe K.S.A. 21-3108(2)(a), an exercise governed on appeal by a de novo or unlimited standard of review. *State v. Looney*, 299 Kan. 903, Syl. ¶ 2, 327 P.3d 425 (2014).

> "The most fundamental rule of statutory construction is that the intent of the legislature governs if that intent can be ascertained. *State v. Arnett*, 290 Kan. 41, 47, 223 P.3d 780 (2010). But if a statute is plain and unambiguous, this court will not speculate

3

about legislative intent or turn to canons of construction or legislative history. *State v. Coman*, 294 Kan. 84, 92, 273 P.3d 701 (2012). On the other hand, where a criminal statute is silent or ambiguous on a matter, the rule of lenity applies to mandate that the statute be construed in favor of the accused. *Cf. State v. Thompson*, 287 Kan. 238, 249, 200 P.3d 22 (2009) (statute silence or ambiguity on unit of prosecution construed in favor of defendant)." *State v. Reese*, 300 Kan. 650, 653, 333 P.3d 149 (2014).

Jordan pursues a two-level attack on the panel's decision. First, he urges this court to overrule *Wilkins*. Failing that, in the alternative, Jordan argues that the State presented sufficient evidence of his involvement in the theft of the Mercedes by deception at the traffic offense bench trial, meaning the *Wilkins* rule was satisfied and the compulsory joinder rule should have precluded his second prosecution.

"Under the compulsory joinder rule, if evidence is admitted of an offense not contained in the charge, later prosecution of that offense is barred if it could have been included as an additional count in the first prosecution." *Wilkins*, 269 Kan. at 260; see *In re Berkowitz*, 3 Kan. App. 2d 726, 742, 602 P.2d 99 (1979). "The objective of the compulsory joinder rule is to further the constitutional guaranty against multiple trials." *Berkowitz*, 3 Kan. App. 2d at 734; see 22 C.J.S. Criminal Law § 314 (statutory compulsory joinder provisions expand proscription of double jeopardy beyond constitutional protections). And this court has long held that the object of K.S.A. 21-3108(2)(a) "is to prevent the prosecution from substantially proving a crime in a trial in which the crime is not charged, and then in effect retrying the defendant for the same offense in a trial where it is charged." *State v. Mahlandt*, 231 Kan. 665, 668, 647 P.2d 1307 (1982). Kansas has long subscribed to the compulsory joinder doctrine. See *Berkowitz*, 3 Kan. App. 2d at 735 (tracing doctrine's origin in Kansas to legislative action in 1935).

At the time of Jordan's trial, K.S.A. 21-3108(2)(a) provided:

"(2) A prosecution is barred if the defendant was formerly prosecuted for a different crime . . . if such former prosecution:

"(a) Resulted in either a conviction or an acquittal and the subsequent prosecution is for a crime or crimes of which evidence has been admitted in the former prosecution and which might have been included as other counts in the complaint, indictment or information filed in such former prosecution or upon which the state then might have elected to rely . . . ."

There are three requirements for application of the compulsory joinder provision to bar a prosecution, occasionally referred to as the *Berkowitz* test: "'(1) The prior prosecution must have resulted in either a conviction or an acquittal; (2) evidence of the present crime must have been introduced in the prior prosecution; and (3) the present crime must be one which could have been charged as an additional count in the prior case.'" *Wilkins*, 269 Kan. at 260 (quoting *Berkowitz*, 3 Kan. App. 2d at 743). Jordan and the State agree that the first and third requirements have been met here. This appeal turns on the second requirement—evidence of the crimes charged in the second case was admitted at the first trial.

In *Wilkins*, this court read a demand for sufficiency into the evidence requirement:

"In order for K.S.A. 21-3108(2)(a) to apply, the evidence presented in an earlier trial needs to be sufficient to support a conviction sought in a later trial. There needs to be more than a mere scintilla of evidence. A slight or passing reference to evidence will not be enough to trigger the application of K.S.A. 21-3108(2)(a). See Spring, *The Effect of Former Prosecutions: Something Old and Something New Under Kan. Stat. Ann. Sec. 21-3108*, 9 Wash. L.J. 179, 185 (1970) (noting that evidence must be sufficient to support conviction in subsequent prosecution). The fact that some evidence used in the first trial

5

is also used in the second trial does not necessarily bar prosecution. *State v. Edgington*, 223 Kan. 413, 417, 573 P.2d 1059 (1978). The question is whether the second crime was proved by the admission of evidence of the second crime in the first trial. *State v. Barnhart*, 266 Kan. 541, 544, 972 P.2d 1106 (1999). To determine this, we adopt a test similar to that used when challenging the sufficiency of evidence on appeal. In order to satisfy the second prong of the *Berkowitz* test, a defendant must show that the evidence presented at the first trial, when viewed in a light most favorable to the defendant, would lead a rational factfinder to find the defendant guilty beyond a reasonable doubt of the crimes in the second trial." *Wilkins*, 269 Kan. at 263.

Jordan relies on the plain language of K.S.A. 21-3108(2)(a) to argue that the statute's use of the word "evidence" does not require a particular quantum of evidence to be admitted in a prior trial and that *Wilkins* improperly demanded sufficient evidence to convict. In his view, the admission of *any* evidence of a crime charged in a later proceeding at a prior trial would support application of the compulsory joinder rule and mandate dismissal of the second prosecution.

*Wilkins* was decided before articulation of our modern pattern for interpretation of clear statutes and construction of ambiguous ones. See, *e.g.*, *Reese*, 300 Kan. at 653. Under this pattern, we first interpret a statute's plain language; if the statutory language is unclear, we move to construction—employing canons, searching legislative history, and identifying substantive background considerations—to define and accomplish legislative purpose.

Although *Wilkins* predates this pattern, we note that the legislature has not seen fit in the past 15 years to pass an amendment to the statutory language to contradict or undercut the *Wilkins* sufficiency rule. Legislative inaction may not be the strongest indicator of specific legislative purpose, see *State v. Quested*, 302 Kan. 262, 279, 352 P.3d 553 (2015), but it is *an* indicator. And we have observed several times over that

6

today's policy makers in the two other branches of state government and those who influence their work do not hesitate to take corrective action when they disagree with this court's reading or application of legislative language. See *State v. Tahah*, 302 Kan. 783, 786-87, 358 P.3d 819 (2015), *cert. denied* February 29, 2016 (recognizing legislative action to abolish lesser included offenses of felony murder in response to *State v. Tahah*, 293 Kan. 267, 262 P.3d 1045 [2011]); *State v. Keel*, 302 Kan. 560, 563, 357 P.3d 251 (2015) (recognizing legislative action for scoring presentencing guidelines convictions in response to *State v. Murdock*, 299 Kan. 312, 323 P.3d 846 [2014], *modified by Supreme Court order* September 19, 2014).

We are also influenced by stare decisis, which is not a rigid inevitability but a prudent governor on the pace of legal change. See *Quested*, 302 Kan. at 271 (doctrine particularly compelling when legislature free to alter statute in response to court precedent but declines to do so).

Under these circumstances, we decline Jordan's invitation to overrule *Wilkins* wholesale.

We do, however, have one remaining *Wilkins* language bother. It appears that the word "would" should be replaced by the word "could" in the following sentence from the *Wilkins* opinion: "In order to satisfy the second prong of the *Berkowitz* test, a defendant must show that the evidence presented at the first trial, when viewed in a light most favorable to the defendant, *would* lead a rational factfinder to find the defendant guilty beyond a reasonable doubt of the crimes in the second trial." 269 Kan. at 264. Sufficiency is a possibility concept, not a probability concept. See *State v. LeClair*, 295 Kan. 909, 911, 287 P.3d 875 [2012]) (admitted evidence of crime sufficient as matter of law if factfinder *could* convict). We see nothing in the K.S.A. 21-3108(2)(a)'s statement of the compulsory joinder rule or its purpose as discerned by the *Wilkins* court that dictates

7

allocation of the higher "would" burden on a defendant seeking to bar a second prosecution.

With the *Wilkins* rule still in place, we also reject Jordan's alternative challenge to his conviction. Although there was some evidence presented in the traffic offenses bench trial that Jordan had deprived Smith of his Mercedes, there was nowhere near sufficient evidence of all of the elements of theft by deception. For example, there was no evidence of deception apparent from or even suggested by the police report, which formed the bulk, if not the entirety, of the content of the parties' stipulation.

CONCLUSION

Defendant Michael Jordan was not entitled to claim the protection of the compulsory joinder rule in K.S.A. 21-3108(2)(a). We affirm the decision of the Court of Appeals and the judgment of the district court.

\* \* \*

JOHNSON, J., dissenting: I dissent, because the court in *State v. Wilkins*, 269 Kan. 256, 7 P.3d 252 (2000), was wrong to rewrite the compulsory joinder statute to the detriment of the criminal defendant to which it applied. *Wilkins* not only violated the decades-old rule of strict construction, but it diluted the purpose of the statute by making joinder less compulsory for the State. It is this court's obligation—not the legislature's— to right its own prior wrongs, and the doctrine of stare decisis was never designed to perpetuate law that was originally erroneous. If we were not going to take a critical look at the bona fides of *Wilkins*' cut-from-whole-cloth "sufficiency of the evidence" holding, we should not have granted the petition for review and simply left *Wilkins*' court-made law as the binding precedent.

8

To be clear, the issue here is one of statutory interpretation, not common law. The *Berkowitz* test referred to in *Wilkins* is simply one Court of Appeals panel's attempt at parsing and enumerating the statutory requirements for compulsory joinder. See *In re Berkowitz*, 3 Kan. App. 2d 726, 743, 602 P.2d 99 (1979). Accordingly, the question in *Wilkins* was not what it takes "to satisfy the second prong of the *Berkowitz* test," 269 Kan. at 263, but rather what the legislature meant by the words: "the subsequent prosecution is for a crime or crimes of which evidence has been admitted in the former prosecution." K.S.A. 21-3108(2)(a).

The first thing to note is that the legislature did not say that a subsequent prosecution is barred when it is for a crime or crimes which were *proved* in a former prosecution. That would have been an easy, straight-forward way to say what *Wilkins* requires. In essence, *Wilkins* effected that result by rewriting the statute to read: "the subsequent prosecution is for a crime or crimes of which [sufficient] evidence [to support a conviction of the defendant] has been admitted in the former prosecution." 269 Kan. at 259. Adding language to a statute was an improper way to construe it, even way back in the year 2000.

The majority appears to excuse *Wilkins*' language-adding tack by suggesting that the *Wilkins* court was not enlightened about our "modern pattern for interpretation of clear statutes and construction of ambiguous ones." Slip op. at 6. But 50 years ago—three and a half decades before the *Wilkins* decision—this court rather explicitly set forth the fundamental rule that should have guided *Wilkins*' statutory construction, to-wit:

> "It is a fundamental rule that penal statutes must be strictly construed in favor of the persons sought to be subjected to their operations. (*State v. Waite*, 156 Kan. 143, 131 P.2d 708 [1942]; *State v. Six Slot Machines*, 166 Kan. 361, 201 P.2d 1039 [1949]; *State v.*

9

*Hill*, 189 Kan. 403, 369 P.2d 365 [1962]; *State v. Wade*, 190 Kan. 624, 376 P.2d 915 [1962].) The rule of strict construction simply means that ordinary words are to be given their ordinary meaning. (*State v. Foster*, 106 Kan. 852, 189 Pac. 953 [1920].) Such a statute should not be so read as to add that which is not readily found therein or to read out what as a matter of ordinary English language is in it. (*State v. Terry*, 141 Kan. 922, 925, 44 P.2d 258 [1935].)" *State, ex rel., v. American Savings Stamp Co.*, 194 Kan. 297, 300, 398 P.2d 1011 (1965).

The ordinary meaning of the ordinary words, "a crime or crimes of which evidence has been admitted in the former prosecution," is simply that the court in the prior prosecution admitted evidence of the subsequently prosecuted crime. It does not mean that evidence admitted in the former prosecution proved the defendant guilty of the subsequent crime. Moreover, "[i]f . . . there are two reasonable and sensible interpretations of a criminal statute, the rule of lenity *requires* the court to interpret its meaning in favor of the accused." (Emphasis added.) *State v. Coman*, 294 Kan. 84, 97, 273 P.3d 701 (2012).

Further, *Wilkins* appears to contradict the very precedent upon which it relies. *Wilkins*' author was the same justice who, the year before, had authored *State v. Barnhart,* 266 Kan. 541, 972 P.2d 1106 (1999). Curiously, *Wilkins* cited to *Barnhart* for the proposition that "[t]he question is whether the second crime was *proved* by the admission of evidence of the second crime in the first trial." (Emphasis added.) 269 Kan. at 263. Yet, *Barnhart* does not actually say that. Rather, it explained that its view was that the legislature intended for K.S.A. 21-3108(2)(a) to give the State two choices:

"[The State] can: (1) either consolidate the two cases or charge all the crimes in one charging instrument whereby evidence of all the crimes charged would be admissible; or (2) the State can elect to have separate trials and not use evidence of the second offense in the first trial. This statutory construction does not disadvantage either the State or the

10

accused and conserves time and the expense required to present the same evidence in two trials." 266 Kan. at 549.

*Barnhart* comports with the statutory language; *Wilkins* requires a rewriting of the statute.

*Wilkins'* impetus to rewrite the statute appears to have been its concern that "a mere scintilla of evidence" could bar a subsequent prosecution. Consequently, it opined that "[a] slight or passing reference to evidence will not be enough to trigger the application of K.S.A. 21-3108(2)(a)." 269 Kan. at 263. But the introduction of evidence of the subsequently prosecuted crime at the first trial is *never* enough, standing alone, to trigger the application of the compulsory joinder statute, even if that admitted evidence convincingly proved the defendant's guilt of the second offense. The touchstone of the compulsory joinder statute is that the subsequently prosecuted crime could have been joined in the former prosecution, *i.e.*, "might have been included as other counts in the complaint, indictment or information filed in [the] former prosecution." K.S.A. 21-3108(2)(a). Without a permissible joinder, there is no bar to a subsequent prosecution, with or without previously admitted evidence. The point of the statute appears to be that the State should subject the defendant to only a single trial, rather than serial prosecutions, if the laws governing joinder permit it. But if the State elects to subject a defendant to multiple trials, it cannot try out the evidence of the second crime in the first trial, even a little bit.

The majority is moved by the fact that the legislature has not chosen to amend K.S.A. 21-3108(2)(a) to correct *Wilkins'* interpretation. With tongue firmly in cheek, I would say that the persons harmed by *Wilkins'* holding—wrongfully prosecuted criminal defendants—simply have not yet enlisted the help of lobbyists powerful enough to convince legislators to sponsor or support such soft-on-crime legislation. Of course, an

election year might not be the best time to attempt that Herculean task. There are good reasons that we place little value on legislative inaction, and this case illustrates one of them.

I am likewise unpersuaded by the majority's half-hearted invocation of the doctrine of stare decisis. In the first place, I do not understand the concept of partial stare decisis which the majority apparently employs. While saying that stare decisis applies, which would bind this court to *Wilkins*' precedent, the majority proceeds to modify the language of *Wilkins*' holding to correct an error in *Wilkins*' statutory interpretation. It would seem that if a court is modifying the holding of a prior case, it is not binding itself to that precedent. But *cf. Miller v. Johnson*, 295 Kan. 636, 653, 289 P.3d 1098 (2012) (declaring stare decisis mandated following the result of a prior case while rejecting prior case's rationale for its holding). In other words, if the constraint of stare decisis does not prevent the majority's correction of *Wilkins*' erroneous use of "would" instead of "could," it would not prevent the correction of Wilkins' failure to employ the rule of strict construction of a penal statute. In my view, cherry-picking the parts of a prior decision that the court wants to follow in the current case is anathema to the concept of being bound by that prior precedent.

Nevertheless, even if partial stare decisis is not an oxymoron, the doctrine is still subject to exceptions, such as where the court is clearly convinced a rule of law established in its earlier cases was originally erroneous. *Rhoten v. Dickson*, 290 Kan. 92, 112, 223 P.3d 786 (2010); see also *Miller*, 295 Kan. at 707-08 (Beier, J., dissenting) (governing rule of stare decisis and its recognized exceptions "excuses us from following precedent that is 'plainly and unmistakably the result of mistake and error'"). I submit that *Wilkins*' sufficiency of the evidence addendum to K.S.A. 21-3108(2)(a) was originally erroneous and the product of mistake and error in the application of well-established rules of statutory construction. I would rectify that error now.

12