No. 55,817

STATE OF KANSAS, *Appellee*, v. BOBBY G. HARPER, *Appellant*.

(685 P.2d 850)

Opinion filed July 13, 1984.

*Kenton D. Wirth,* of Wichita, argued the cause and was on the brief for appellant.

*James D. Hall,* assistant district attorney, argued the cause, and *Clark V. Owens,* district attorney, and *Robert T. Stephan,* attorney general, were with him on the brief for appellee.

The opinion of the court was delivered by

MILLER, J.: This is an appeal by the defendant, Bobby G. Harper, from his conviction of burglary, K.S.A. 21-3715, by jury trial in Sedgwick District Court. The Court of Appeals held that the evidence was sufficient to establish the first element of the offense, unauthorized entry into the school building, but that the evidence was insufficient to establish the second element: that the person or persons who entered the school did so *with the*

*intent to commit a theft.* On this basis, the Court of Appeals reversed. *State v. Harper,* 9 Kan. App. 2d 349, 676 P.2d 774 (1984). We granted the State's petition for review. K.S.A. 20-3018(*b*).

The Court of Appeals summarized the facts as follows:

"The State's evidence showed that the Earhart Elementary School in Wichita was broken into at 4:56 a.m. on September 9, 1982. Chris Wimberly, a security dispatcher monitoring an audio security system over telephone lines to the school district's central service office, heard a loud crash at about that time. He called Wichita police and the school district's security patrol, both of whom arrived at the school shortly after 5:00 a.m. In the meantime Wimberly heard footsteps in the halls and the sound of glass breaking close to the school office. He then heard 'some shuffling in the office, possibly a desk drawer opening and closing and the exit and glass and the footsteps on the floor.'

"A few minutes later police observed someone running away from the school whom they were unable to apprehend. After hearing police radio transmissions describing the flight Wimberly heard footsteps which he could identify as coming from the school gymnasium, followed by the sound of someone hitting a panic bar on the gym's exit doors. A few minutes later, at about 5:10 or 5:12, defendant was apprehended lying down near a gate to the schoolyard.

"Defendant at that time told the arresting officer that he hadn't entered the school, knew who did, but declined to say who it was. At trial he testified that he had been drinking earlier; that a companion was driving his car when they ran out of gas across the street from the school; that he slept while the companion went for gas; that he awoke and had gotten out to find his missing companion when he heard glass breaking at the school; and that when he went to investigate the officers arrived. He hid because he didn't want to get involved.

"Examination of the school showed that two outside windows had been broken, one to a classroom and one by throwing a rock that ended up in the teacher's lounge. In addition, an inside window was broken by the door handle to the office. Nothing was missing from the school and nothing showed any sign of having been disturbed except the three broken windows. A screwdriver was found on the floor of the classroom with the broken window, positioned so that the door from the classroom to the hall would not close. The origin of the screwdriver does not appear." 9 Kan. App. 2d at 349-50.

Other facts disclosed by the evidence, which we believe are important, are as follows. The rooms within the school are kept locked at night. The classroom with the broken window was some 500 to 1,000 feet from the secretary's office. The broken classroom window was closed but unlocked. There was no evidence of any damage, destruction or vandalism within the school other than the three broken windowpanes. The interior window in the door to the secretary's office was broken at the closest point to the door handle. The secretary's office contained valuable personal property including a typewriter, calculator, mime-

ograph machine, adding machine, weather all-band radio, and another radio.

Chris Wimberly, the security dispatcher who was monitoring the school, testified that the listening devices were very sensitive and he could pick up very light breathing in the office areas. At four minutes before 5:00 o'clock in the morning he heard very loud, sharp, banging noises to the exterior walls or glass windows. He immediately alerted the police department and school security personnel. About a minute later, he heard footsteps inside the building and then he heard very loud breakage of glass very close to the office. He could hear distinct blows to the glass and to the door. He heard someone enter the office and walk on the broken glass. Then he just heard noises in the hallway until the police arrived at five minutes after 5:00 o'clock a.m. Next, he heard one of the officers report that someone was running away but was not "catchable." And then about a minute later, an officer reported that he heard noise in the bushes on the south drive and a spotlight revealed someone hiding there. The person who was hiding was the defendant; he was arrested.

At the time of his arrest, Harper told the officers that he and a friend were walking down the street on which the school was located and that his friend decided to break into the school. Harper said that he did not enter the school; he stayed outside and waited for the friend to leave. At trial, as the Court of Appeals noted, Harper testified that he was riding in Rodney Hiles' car and that Hiles ran out of gas and pulled into a private driveway across from the school. Hiles took a can from the trunk and left to get some gas. Harper stayed and slept in the car. Later, he woke up, stepped outside the car, heard a noise like glass breaking coming from the school, and then walked across the street toward the school. Almost immediately he saw the police arriving, and he hid because he did not want to get involved.

The principal issue for us to determine is whether there was sufficient evidence to support the necessary finding of specific intent to commit a theft. Burglary is a specific intent crime. Our burglary statute, K.S.A. 21-3715, so far as we are here concerned, requires proof that the accused (1) knowingly and without authority entered into a building, (2) with intent to commit a theft therein. The first element of burglary is clearly established. As the Court of Appeals opinion states:

"From the State's evidence the jury could reasonably have inferred that two persons entered the school, that one got away, and that defendant was the second person to leave. Or, it could have found that defendant was a lookout and thus an aider and abettor. Under either theory defendant would be guilty of the unauthorized entry." 9 Kan. App. 2d at 350.

Commenting on the evidence—or lack of it—with reference to intent, the Court of Appeals said:

"In this case there was evidence from which the jury could readily have inferred that someone broke into the school, and also that that person was either defendant or an accomplice. The key question is, what evidence justified an inference that the intruder had an intent to steal when he broke in? We find nothing beyond the fact of the unlawful entry itself. . . .

"Burglary is a specific intent crime. *State v. Farris*, 218 Kan. 136, 140, 542 P.2d 725 (1975); *State v. Miles*, 213 Kan. 245, 515 P.2d 742 (1973). Standing alone, the mere fact of an unlawful entry into a building does not support an inference that the intruder entered with any particular intent. . . . [T]here must be *some* additional evidence from which . . . intent may reasonably be inferred. . . . Where nothing is in fact stolen . . . evidence of preparation to steal may be enough to support the desired inference. No such evidence is present here.

"A contrary rule would simply eliminate the specific intent required by the statute as an element of the crime. If unauthorized entry were enough, a defendant could be convicted of burglary for acts constituting no more than criminal trespass under K.S.A. 21-3721. That, as we see it, was the most the State's evidence proved in this case." (Emphasis in original.) 9 Kan. App. 2d at 351-52.

Assume that an accused, a lone backpacker in a rural area, ignores a prominently posted "No Trespassing" sign and steps inside the open door of an empty barn in order to gain shelter from a sudden downpour at midday. Such facts, standing alone, could not reasonably give rise to an inference that the trespasser entered with theft in mind. Assume, however, that the accused breaks the lock on a rear door and enters a pharmacy or a jewelry store at midnight, and shortly thereafter is found concealing himself inside the store. Is not an inference of intent to commit a theft logical?

The intent with which an entry is made is rarely susceptible of direct proof; it is usually inferred from the surrounding facts and circumstances. See 12A C.J.S., Burglary §§ 85 and 104; 13 Am. Jur. 2d, Burglary §§ 25 and 52; 3 Underhill's Criminal Evidence § 717 (5th ed. 1957). The manner of the entry, the time of day, the character and contents of the building, the person's actions after entry, the totality of the surrounding circumstances, and the

intruder's explanation, if he or she decides to give one, are all important in determining whether an inference arises that the intruder intended to commit a theft.

In 3 Wharton's Criminal Law § 338 (14th ed. 1980), the author states:

"At common law, a defendant who breaks and enters into a dwelling house must, at the time he does so, intend to commit a felony therein. It is not necessary that the felony intended be committed. Nor does it matter why the intended felony was not committed, as where the defendant's presence was discovered, he was stopped by police officers, or he was otherwise unable to commit the felony.

"If no felony be committed, and no satisfactory explanation for the break and entry is apparent, the jury may infer that the defendant intended to commit larceny." pp. 214-217.

Perhaps the leading Kansas case on intent, in connection with burglary, is *State v. Gatewood,* 169 Kan. 679, 221 P.2d 392 (1950). Syllabus ¶¶ 2, 3 and 4 read as follows:

"In a prosecution for burglary of a dwelling house of another in the nighttime the 'intent to commit some felony, or any larceny therein' is a necessary element of burglary in the first degree under G.S. 1935, 21-513." Syl. ¶ 2.

"Intent is a state of mind existing at the time an offense is committed and may be shown by acts, circumstances and inferences reasonably deducible therefrom and need not be established by direct proof." Syl. ¶ 3.

"In the absence of proof of other intent, or an explanation of an unlawful breaking and entry into the dwelling house of another at night, the inference is the intent of the intruder was to commit larceny rather than some other felony." Syl. ¶ 4.

In the opinion, Justice Wedell, speaking for a unanimous court, said:

"Appellant next argues there was no evidence appellant broke into the dwelling 'with intent to commit *larceny.*' . . . It may be conceded there was no direct proof of appellant's intent. It is also true the statute makes 'intent to commit some felony, or any larceny therein' an element of the offense of burglary in the first degree.

"Intent is a state of mind existing at the time a person commits an offense. If intent must have definite and substantive proof it would be almost impossible to convict, absent facts disclosing a culmination of the intent. The mind of an alleged offender, however, may be read from his acts, conduct and inferences reasonably to be drawn therefrom. Frankness requires it be stated there is not complete unanimity of opinion among the courts relative to whether the intent to commit *larceny,* in connection with a burglary charge, must be affirmatively shown to exist as distinct from some other offense that might have been intended. In *Simpson v. State of Florida,* 81 Fla. 292, 87 S. 920, it was held such intent must be affirmatively shown by direct or circumstantial evidence. In *State v. Riggs,* 74 Minn. 460, 77 N.W. 302, relied on by appellant, a divided court held the evidence insufficient to disclose an intent to commit larceny. That decision is

discussed in our own case of *State v. Van Gilder*, 140 Kan. 66, 33 P.2d 936. There was some positive evidence in the Minnesota case the defendant did not intend to steal but to buy liquor at the place he entered. In the Van Gilder case we held:

'In a prosecution for burglary, where the breaking and entering was clearly established and not controverted, the intent to steal may be sufficiently established by inference fairly deducible from all the circumstances and need not be established by direct proof.' (Syl. ¶ 1.)

"For purposes of accuracy it should be conceded there was some rather strong circumstantial evidence of intent to commit larceny in our Van Gilder case. In the opinion we cited *State v. Woodruff*, 208 Ia. 236, 225 N.W. 254. Numerous cases are cited in a well considered opinion in the Iowa case holding the clear weight of authority to be that an unexplained breaking and entering of a dwelling house in the nighttime is in itself sufficient to sustain a verdict that the breaking and entering was done with the intent to commit *larceny* rather than some other felony. The Iowa case contains quotations from some of the many cases so holding, which need not be repeated here. The fundamental theory upon which the inference of intent to commit *larceny* is based, absent evidence of other intent or an explanation for breaking and entering, is that the usual object or purpose of burglarizing a dwelling house at night is theft. We are impressed with the soundness of the rule.

"Moreover in the instant case we cannot say there were no circumstances from which the jury reasonably might infer appellant intended to commit larceny. Appellant sought to make entry through various doors and windows. He used his flashlight on the screen porch. It is reasonable to infer he found nothing there he desired. He then flashed the light all over the adjoining kitchen. It reasonably may be inferred he was endeavoring to ascertain whether the kitchen, or any other portion of the dwelling he could see, contained something he desired. He may have seen something. Finding entrance into the kitchen impossible from the screen porch he made attempts to enter at other places. We think it cannot be said the verdict must be set aside on the ground a prima facie case of intent to commit larceny was not established." (Emphasis in original.) 169 Kan. at 683-85.

Other courts have inferred intent from the surrounding circumstances, where the entry was unexplained, even though the entry or attempted entry was into commercial buildings. For example, in *Lisenko; Stepien v. State*, 265 Ind. 488, 355 N.E.2d 841 (1976), the evidence disclosed that at about 4:00 o'clock in the morning a silent alarm was set off in a building occupied by the Indiana Carton Company, South Bend, Indiana. Police officers arrived at the scene six minutes after the alarm sounded. They discovered that a door had been pried open, and upon entering the building with a police dog, an officer found two suspects with their hands up stating that they "gave up." Two pry bars were discovered on the floor two or three feet inside the door. On the element of intent, the court said:

"The Appellants' sufficiency arguments assert that the evidence in this case

failed to establish the second element, intent. We do not agree. The evidence at trial established that entry to the building in question was effected by prying open a locked steel door at about 4:00 a.m. No employees of the business were present in the building. The Appellants offered no explanation for their presence. In the absence of evidence that this forced entry was made with some lawful intent, we think that the intent to commit a felony may be reasonably inferred from the time, force, and manner in which the entry here was made. In addition, the Appellants' statement to police that they 'gave up' evidenced a consciousness of guilt from which the jury could further infer a felonious purpose. An inference of guilt may be drawn therefrom the same as if the Appellants had fled.

"While the State must sustain its burden of proof on each element of an offense charged, some of these elements may be proven by circumstantial evidence and the logical inferences therefrom. *Kondrup v. State,* (1968) 250 Ind. 320, 235 N.E.2d 703. Because intent 'is a mental state of the actor, the trier of fact must resort to reasonable inferences based upon examination of the surrounding circumstances to reasonably infer its existence.' *Farno v. State,* (1974) 159 Ind. App. 627, 308 N.E.2d 724 at 725. As stated in my dissenting opinion in *Crawford v. State,* (1968) 251 Ind. 437 at 446, 241 N.E.2d 795 at 800, not to permit such an inference under circumstances such as here:

'. . . penalizes efficient methods of law enforcement, such as alarm systems. Police officers promptly alerted, must wait until the intruder has first seized property or committed a rape or some other felony before the intruder may be convicted of a felony. A home owner who finds an intruder in his home at night will be surprised to learn that such a law-breaker cannot be convicted of a felony until he has first seized property or raped somebody, even though he can make no logical explanation of why he is there and even though he may be hiding or attempting to flee.'

To the extent that *Crawford v. State, supra,* conflicts with the holding of this case, it is overruled." 265 Ind. at 490-91.

In *People v. Patterson,* 1 Ill. App. 3d 724, 274 N.E.2d 218 (1971), the defendant appealed from his conviction of the burglary of a school building. Police officers were dispatched to the building at approximately 11:45 p.m., and observed four men run out the school door. Defendant was one of those leaving the building; he was arrested. Pry marks were found on the school door and a screwdriver was found in the hand of one of the fugitives. There was also evidence that desk drawers had been pulled out and their contents spilled out on the floor. Nothing was taken from the building. Upon appeal defendant challenged the sufficiency of the evidence to establish intent. The court said:

"The defendant also claims that there was insufficient evidence to show intent to commit a felony or theft. Circumstantial evidence may be sufficient to prove the existence of intent. (*People v. Taylor,* 410 Ill. 469, 102 N.E.2d 529.) Here

again the evidence of the forcible entry, the late hour of the occurrence, the flight from the building, and the rifling of the desks within the building, even in view of the testimony that nothing was taken, is more than sufficient for the triers of fact to conclude that the entry was with the intent to commit a theft." 1 Ill. App. 3d at 727.

Turning to the facts of the case now before us, a public school was entered at night, when it was closed and unoccupied. Entry was forced by breaking two windows. Except for the presence of the electronic listening devices, the entry would probably have gone undetected until the following day. Once the intruder or intruders were inside the building, a classroom door was propped open to prevent it from locking, thus leaving a clear escape path to the unlocked window. From the classroom where entry was made, the intruders made a "beeline" to the secretary's office, where valuables were kept. A forcible entry through a locked inner door was effected, exposing the unprotected and readily removable items to the intruders. The door to the secretary's office was damaged just enough to allow it to be opened. No rooms other than the two exterior rooms and the secretary's room were disturbed. Police cars arrived with flashing red lights readily visible at night, and the intruder or intruders left abruptly. Under these circumstances, it is not surprising that nothing was taken.

Harper was found hiding in a field outside the school without much of an explanation for being there. On the night of his arrest, he told police a story quite different from the one he told in court; neither story did much to explain his presence or deny guilt. We hold that these facts give rise to an inference that the intruder or intruders entered the building with the intent to steal or commit theft therein. The jury's verdict was rational and is supported by the evidence. Viewing the evidence, as we must, in the light most favorable to the prosecution, we are convinced that a rational factfinder could have found the defendant guilty beyond a reasonable doubt. State v. Burton, 235 Kan. 472, 681 P.2d 646 (1984); State v. Pondexter, 234 Kan. 208, 671 P.2d 539 (1983); State v. Voiles, 226 Kan. 469, 601 P.2d 1121 (1979).

As the Court of Appeals observed:

"From the State's evidence the jury could reasonably have inferred that two persons entered the school, that one got away, and that defendant was the second person to leave. Or, it could have found that defendant was a lookout and thus an

aider and abettor. Under either theory defendant would be guilty of the unauthorized entry." 9 Kan. 'App. 2d at 350.

Likewise, the defendant either entered with intent to commit larceny or he aided and abetted one who did.

One other issue is raised in the brief. Defendant contends that the trial court erred in failing to instruct on criminal damage to property, which he contends is an included crime upon which the trial court was required to instruct. The difficulty with this argument is that the element of willfully injuring, damaging, mutilating, defacing, destroying, or substantially impairing the use of property is not an element of burglary. It is entirely possible to establish a burglary without proving damage, and the mere fact that there was damage to the building in this case does not make criminal damage to property a lesser included offense. We conclude that criminal damage to property is not a lesser included offense of burglary, and the trial court did not err in refusing to instruct on that offense.

The judgment of the Court of Appeals is reversed, and the judgment of the trial court is affirmed.

HOLMES, J., not participating.