(246 P.3d 1008)
No. 103,082

STATE OF KANSAS, *Appellee*, v. RAYMOND ED WILSON, *Appellant*.

Opinion filed February 4, 2011.

*Rick Kittel*, of Kansas Appellate Defender Office, for appellant.

*Natalie Chalmers*, assistant district attorney, *Chadwick J. Taylor*, district attorney, and *Steve Six*, attorney general, for appellee.

Before BUSER, P.J., STANDRIDGE, J., and BUKATY, S.J.

STANDRIDGE, J.: Raymond Ed Wilson appeals his convictions for burglary and criminal damage to property. He claims the court committed reversible error by giving an *Allen*-type instruction, and the evidence was insufficient to support a finding of guilt on the burglary charge. For the reasons stated below, we affirm.

## FACTS

Michael Hochard, a corporal with the Topeka Police Department, was on duty the evening of March 24, 2009, when he received a burglary alarm call at a State Farm Insurance building. When he arrived at the scene, he noticed a broken window on the front of the building next to a front door. Hochard moved towards the building, drew his firearm, and waited outside for additional officers. Seeing the owner of the building pull into the parking lot, Hochard waved her away.

While he was waiting outside, Hochard observed a male from inside the building come into view, walk toward the front door next to the broken glass, look at Hochard's patrol car, and recede back into the building. Hochard contacted dispatch to report that someone was inside the building. Within a few seconds, Hochard heard glass breaking on the back side of the building. He moved around the back and observed an individual climbing out of a window. Hochard pointed his gun at the individual, who was facing away from him, and yelled, " 'Police, show me your hands.' " The individual turned around and raised his hands. As he did so, Hochard noticed the individual was holding onto a cloth or rag. At trial, Hochard identified the individual he saw as Wilson.

Lynette Hudson is a State Farm agent and owner of the building. She testified the business was not open at the time of the incident and Wilson did not have permission to be inside. She reported that the front window had been broken with a landscaping rock that had gone through the window, bounced off some sheetrock, and landed inside the building. The rock left a hole in the landing. She testified the total damage to the building was less than $1,000. She also testified the only items missing from the building were some shop rags.

Wilson testified that on the day of the incident, he was feeling anxious and decided to go for a walk. His attention was drawn to the State Farm building because "it looked like it was being worked on." He testified he had done several construction jobs in the past. He approached the building, looked inside, and noticed that some sheetrock had been installed. He opened the door and looked inside. He thought he heard some noises inside, but he suffers from tinnitus and could not be sure what they were. He called out to see if anyone was in the building and then went down a stairwell. He did not see anyone in the building and became concerned. He decided he should leave. Wilson walked back up the stairs and noticed a plate glass window with a "lot of glass in front." At that point, he observed a patrol car pull into the parking lot. He decided he would rather speak with the police outside so they would know they had no reason to shoot him, so he went to the back of the building and exited through a window. He noticed there was an inner window and an outer window, and it looked like the outer window had fallen off.

Wilson testified he did not enter the State Farm building with the intent to take anything and did not remain in the building with such an intent. He testified: "[I]t looked, like, kind of like an empty building pretty much." He also claimed he did not break the front window and did not intentionally break the rear window. He did acknowledge, however, that he refused to provide his name when asked.

At a preliminary jury instruction conference with the parties, the court proposed giving the deadlocked jury, or *Allen*-type, instruction, PIK Crim. 3d 68.12, to which Wilson objected. The court overruled the objection, noting that the instruction had been modified from a previous version and could now be properly given. The court similarly overruled Wilson's objection during the instruction conference held after the close of evidence. The jury ultimately found Wilson guilty of burglary (building not used as a dwelling) and criminal damage to property and not guilty of misdemeanor theft of the shop rag.

## ANALYSIS

Wilson presents the following issues for determination in this

appeal: (1) whether the district court's decision to provide the jury with an *Allen*-type instruction was reversible error; and (2) whether the evidence presented was sufficient to support a finding of guilt on the burglary charge. We address each issue in turn.

## Allen-*type Instruction*

When a party objects to a jury instruction, the instruction will be examined to determine whether it properly and fairly states the law as applied to the facts of the case and could not have reasonably misled the jury. "In making this determination an appellate court is required to consider the instructions as a whole and not isolate any one instruction. [Citations omitted.]" *State v. Appleby*, 289 Kan. 1017, 1059, 221 P.3d 525 (2009).

In this case, the jury was presented with PIK Crim. 3d 68.12, which instructs:

"Like all cases, this is an important case. If you fail to reach a decision on some or all of the charges, that charge or charges are left undecided for the time being. It is then up to the state to decide whether to resubmit the undecided charge(s) to a different jury at a later time.

"This does not mean that those favoring any particular position should surrender their honest convictions as to the weight or effect of any evidence solely because of the opinion of other jurors or because of the importance of arriving at a decision.

"This does mean that you should give respectful consideration to each other's views and talk over any differences of opinion in a spirit of fairness and candor. You should treat the matter seriously and keep an open mind. If at all possible, you should resolve any differences and come to a common conclusion.

"You may be as leisurely in your deliberations as the occasion may require and take all the time you feel necessary."

In another instruction, the jury was admonished: "Your only concern in this case is determining if the defendant is guilty or not guilty. The disposition of the case thereafter is a matter for determination by the court."

Wilson claims it was improper to provide the jury with PIK Crim. 3d 68.12 because (1) the instruction is legally flawed in that it allows the jury to consider matters outside the evidence presented at trial; to wit, that in the event of a hung jury, the State would decide whether to resubmit the charges to a different jury; and (2) the

instruction is misleading because it is in direct conflict with another instruction.

We begin our analysis of Wilson's claims by briefly reviewing the history of PIK Crim. 3d 68.12. In *State v. Salts*, 288 Kan. 263, 200 P.3d 464 (2009), the jury was provided a prior version of the instruction that included the following language at the conclusion of the first paragraph: " 'Another trial would be a burden on both sides.' " 288 Kan. at 264. The jury also was instructed not to consider the disposition of the case after it reached a verdict. 288 Kan. at 264. Salts did not object to the deadlocked jury instruction at trial, but on appeal he claimed that the language regarding a second trial being a burden on the parties was misleading and inaccurate based on his fundamental right to be tried by a jury. He also claimed on appeal that the jury should not have been instructed to consider matters outside the evidence presented at trial. 288 Kan. at 265.

In resolving Salts' claim, our Supreme Court held:

"Contrary to this language, a second trial may be burdensome to some but not all on either side of a criminal case. Moreover, the language is confusing. It sends conflicting signals when read alongside Instruction 11 or a similar instruction that tells jurors not to concern themselves with what happens after they arrive at a verdict." 288 Kan. at 266.

Based on this holding, the court directed the PIK Committee to remove the language regarding a burden on the parties from the pattern instruction. Notwithstanding this directive, the court found that giving the instruction in that particular case was not clearly erroneous because there was no real possibility the jury would have rendered a different verdict if the error had not occurred. 288 Kan. at 267.

In this case, the district court presented the jury with the post-*Salts* version of PIK Crim. 3d 68.12, which makes no reference to the burden of another trial. But Wilson argues the post-*Salts* version of PIK Crim. 3d 68.12 continues to be defective based on the last sentence of the first paragraph, which advises the jury that if it fails to reach a decision on some or all of the charges, that charge or charges are left undecided for the time being and "[i]t is then up to the state to decide whether to resubmit the undecided

charge(s) to a different jury at a later time." Specifically, Wilson contends this language improperly directs the jury to consider matters outside the evidence presented at trial.

Appellate courts in Kansas have never addressed the propriety of this specific portion of the instruction. The first question presented for determination, then, is whether the language in the instruction that is challenged by Wilson properly and fairly states the law as applied to the facts of the case. We find that it does. First of all, and unlike the finding in *Salts* that the disputed portion of the instruction was inaccurate ("Contrary to this language, a second trial may be burdensome to some but not all on either side of a criminal case." 288 Kan. at 266), the language about which Wilson complains accurately states the course of action that ensues after a jury fails to reach a decision on some or all of the charges. And, although an isolated reading of this particular language may touch on a matter outside the evidence presented at trial, the instruction when read in its entirety fairly and accurately advises that disposition of the case after a verdict has been reached is no concern to the jury and, if a verdict cannot be reached, the jury will not be asked to decide whether the defendant should be tried a second time.

The second question presented is whether the jury could have reasonably been misled by the instruction. To that end, Wilson argues that when read together, the instructions referenced above are misleading because the jury is advised on the one hand to be concerned only with a determination regarding guilt, but on the other hand is advised that if it fails to reach a decision regarding guilt, the State will decide whether to retry the defendant.

Wilson's argument is without merit. In this case, the instructions expressly conveyed to the jury that its function was to decide whether the defendant was guilty and, if a verdict cannot be reached, it would not be asked to decide whether the defendant should be tried a second time. The instruction was given prior to the beginning of deliberations and not in response to a jury question. There is no evidence that the jury was having trouble reaching a verdict. In sum, whether read individually or in conjunction with each other, no reasonable juror would conclude from these instruc-

tions that it was permissible to consider matters outside the evidence presented at trial to decide whether the defendant was guilty.

*Sufficiency of the Evidence*

When the sufficiency of the evidence is challenged in a criminal case, an appellate court reviews all the evidence, viewed in the light most favorable to the prosecution, to determine whether the court is convinced that a rational factfinder could have found the defendant guilty beyond a reasonable doubt. *State v. Trautloff*, 289 Kan. 793, 800, 217 P.3d 15 (2009).

Wilson was charged with burglary (building not used as a dwelling), in violation of K.S.A. 21-3715(b). Consistent with the statutory language, the jury instruction required the State to prove that Wilson entered the State Farm building without authority and "with the intent to commit a theft therein." The jury found Wilson guilty as charged. But Wilson argues the only evidence to support the jury's finding that he intended to commit theft in the building was the fact that he was holding a cloth or rag at the time he left, a fact the jury found insufficient to support the charge of misdemeanor theft against him. In support of this argument, Wilson claims that nothing was taken other than the cloth or rag, even though the building presumably had other valuables he could have taken. Wilson also highlights his trial testimony stating that he only entered the building because he heard noises and thought there might be construction taking place that he wanted to observe.

Burglary is a specific intent crime. Intent may be inferred from circumstantial evidence. *In re D.A.*, 40 Kan. App. 2d 878, 893, 197 P.3d 849 (2008). In fact, "[t]he intent with which an entry is made is rarely susceptible of direct proof; it is usually inferred from the surrounding facts and circumstances." *State v. Harper*, 235 Kan. 825, 828, 685 P.2d 850 (1984). Factors to consider in determining intent include the manner of entry, time of day, character and contents of the building, the intruder's actions after entry, the intruder's explanation, and the surrounding circumstances. 235 Kan. at 828-29.

The evidence presented at trial established that someone threw a landscaping rock through the front window of the State Farm Insurance building and set off an alarm. Wilson was observed inside the building and subsequently apprehended trying to leave the rear of the building through another broken window after he observed a patrol car in the front. This all occurred after 7:30 p.m. when the business was closed. Although Wilson testified he did not enter the State Farm building with the intent to take anything and did not remain in the building with such an intent, the jury's verdict clearly indicates it was not persuaded by Wilson's testimony. An appellate court does not reweigh the evidence, assess the credibility of the witnesses, or resolve conflicting evidence. *State v. Gant*, 288 Kan. 76, 80, 201 P.3d 673 (2009). Viewing the evidence presented in a light most favorable to the prosecution, we are convinced a rational factfinder could have found the defendant guilty of burglary beyond a reasonable doubt.

Affirmed.