NOT DESIGNATED FOR PUBLICATION

No. 115,802

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

JESSE LOZANO JR.,
*Appellant*.

MEMORANDUM OPINION

Appeal from Sedgwick District Court; DAVID J. KAUFMAN, judge. Opinion filed September 29, 2017. Reversed and remanded with directions.

*Carl F.A. Maughan*, of Maughan Law Group LC, of Wichita, for appellant.

*Lesley A. Isherwood*, assistant district attorney, *Marc Bennett*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before ARNOLD-BURGER, C.J., GARDNER, J, and STUTZMAN, S.J.

PER CURIAM:  Jesse Lozano Jr., convicted of aggravated burglary and misdemeanor theft, appeals his aggravated burglary conviction. He argues insufficiency of the evidence and an erroneous jury instruction. For the reasons stated below, we reverse Lozano's conviction for aggravated burglary and remand for resentencing on the lesser included offense of burglary.

1

*Factual and procedural background*

At trial, Salvador Palacios testified as to the following facts. On September 26, 2014, Palacios returned home from work at about 3 p.m., unlocked the front door, and went inside. Passing through the living room, he noticed that the family's PlayStation 4 game console had been moved. He then noticed that his laptop computer was not in the kitchen where he had left it. Palacios got his handgun from the bedroom and inspected each room of the house, looking for an intruder.

When Palacios went to the basement, he found a man leaning against the water heater. Palacios recognized the man as Jesse Lozano, the father of Palacios' girlfriend's four children. Palacios' girlfriend and her children were living in the house at the time.

Palacios asked Lozano what he was doing there, and Lozano replied by telling him to be quiet because the police were looking for him. The men argued and then began to fight. They wrestled up the stairs, breaking the handrail off of the wall and damaging the wall, before Palacios chased Lozano out of the house and across a road. Palacios then called 911.

The responding officer, Trevor Johanson, inspected the outside of the house and found an open window, a cut screen, and a green chair placed under the open window. Palacios testified that the chair belonged on the deck. Palacios told the officer that his laptop was missing, but it was later found near the furnace in the basement. Palacios did not report anything else missing at the time. The officer found a bottle of tequila near the water heater where Lozano was discovered, and one of Lozano's fingerprints was later found on that bottle.

A few days later, Palacios told police he had discovered that several other items were missing from his house: cash, cologne, a CD case, a hand-held video game player,

2

and a sweater. The officer testified that it is not uncommon for a victim to notice items missing a few days after a burglary. Palacios was not seen with the items, nor were they recovered. Lozano was arrested and charged with misdemeanor theft and both means of aggravated burglary—unlawfully entering into or remaining within Palacios' home.

At the jury instructions conference, the parties addressed the elements instruction's requirement that at the time of entry, a human being was in the building. The State asked to add the following language to the instruction on aggravated burglary: "[I]f you find that a person enters the premises after the burglary has commenced, but before the defendant has left the premises, you may consider that element satisfied." That language was taken from the Notes on Use for PIK Crim. 4th 58.130 (2013 Supp.). Lozano's counsel objected and a long discussion ensued. Ultimately, the trial court included the following paragraph in the jury instructions instead of the language the State had requested: "Kansas law states that a human being is considered to be in the building if the human being enters the building at any point in time while the person committing the crime of aggravated burglary is present in the building."

The jury convicted Lozano of misdemeanor theft and aggravated burglary. The district court denied a downward departure and sentenced him to a prison term of 128 months for the aggravated burglary and a consecutive 12-month jail term for the theft. Lozano timely appeals, claiming that the district court erred in the jury instructions and that insufficient evidence supports his aggravated burglary conviction.

*Did the district court err in adding a paragraph to the PIK instruction?*

We first address Lozano's argument that the district court erred by adding language to the standard PIK jury instruction on aggravated burglary.

3

The Kansas Supreme Court has outlined the sequential steps to be taken in assessing a claimed error in instructing jurors on the governing law. *State v. Brown*, 300 Kan. 542, 554-55, 331 P.3d 781 (2014); *State v. Plummer*, 295 Kan. 156, Syl. ¶ 1, 283 P.3d 202 (2012). The appellate court determines: (1) reviewability considering preservation of the issue at trial and jurisdiction; (2) legal appropriateness of the instruction; (3) factual support in the evidence for the instruction; and (4) harmlessness of any actual error. 295 Kan. 156, Syl. ¶ 1. Here, the record reveals that Lozano's attorney timely objected to the district court's giving of the challenged instruction. The State does not argue that any actual error was harmless. Thus we focus on whether the aggravated burglary instruction was legally and factually appropriate.

The challenged jury instruction stated:

"The defendant is charged with aggravated burglary. . . . To establish this charge, each of the following claims must be proved:

"1. The defendant entered a building, to-wit: a residence.
"2. The defendant did so without authority.
"3. The defendant did so with the intent to commit a theft therein.
"4. At the time there was a human being in the building.
"5. This act occurred on or about the 26th day of September, 2014,
   in Sedgwick County, Kansas.

"*As it relates to claim no. 4 above, Kansas law states that a human being is considered to be in the building if the human being enters the building at any point in time while the person committing the crime of aggravated burglary is present in the building.*"
(Emphasis added.)

The language in the instruction was taken from PIK Crim. 4th 58.130, except for the language added by the district court, which we have italicized above. The district court stated that if this paragraph were not included, the jury would have to find Lozano

not guilty because it was undisputed that no one was in the home when he entered it. The district court also stated that if the added paragraph were not included, it would have to instruct on the lesser included offense of burglary. The district court found the paragraph "unequivocally supported by Kansas law," citing *State v. May*, 39 Kan. App. 2d 990, 186 P.3d 847 (2008).

But *May* was overruled in *State v. Daws*, 303 Kan. 785, 786, 368 P.3d 1074 (2016). Although *Daws* was decided after Lozano's conviction, we apply that decision here in accordance with the general rule that an overruling decision will be applied to all similar cases pending at the time the overruling decision is announced. *State v. Collier*, 306 Kan. 521, 525, 394 P.3d 1164 (2017). Lozano's case is pending because it is on direct appeal. See *Kirtdoll v. State*, 306 Kan. 335, 340, 393 P.3d 1053 (2017) (A case is not final until all direct appeals are exhausted and the time for rehearing or final review has passed.).

*Daws* held that when a jury is instructed only on the "entering into" means of aggravated burglary, the presence of a person inside the residence at the time of entry is required for conviction. 303 Kan. at 794. There, no one was inside the house when Daws entered it. He stayed in the house overnight and was found by the owner the next day. The *Daws* jury was instructed as to the elements of aggravated burglary, but only as to the "entering into" means of the crime, not the "remaining within" means. *Daws* held that these are alternative means of committing the crime:

> "'[T]he phrases "entering into" and "remaining within" refer to legally distinct factual situations.' *State v. Gutierrez,* 285 Kan. 332, Syl. ¶ 2, 172 P.3d 18 (2007). Stated another way, these phrases constitute alternative means of committing the crime. *State v. Frierson,* 298 Kan. 1005, 1011, 319 P.3d 515 (2014). The entering into element is satisfied when the evidence shows a defendant crossed the plane of a building's exterior wall. In contrast, the remaining within element refers to a defendant's presence in the building's interior after entry has occurred. *Gutierrez,* 285 Kan. at 337. Both situations

5

may take longer than a mere moment, but 'remaining within connotes at least briefly continuous behavior.' 285 Kan. at 337-38." *Daws*, 303 Kan. at 789.

The State attempts to distinguish *Daws* because Daws was charged only with the "entering into" means. Here, the State charged Lozano with both the "entering into" and "remaining within" means of aggravated burglary. But a panel of our court rejected this distinction in *State v. Montgomery*, No. 108,164, 2016 WL 7428308 (Kan. App. 2016) (unpublished opinion). In *Montgomery*, as here, the State charged both the "entering into" and "remaining within" means of aggravated burglary. Nonetheless, we found that to be a distinction without a difference given the way the State had argued its case:

> "This difference in charging, however, is a distinction without a difference given that during Montgomery's trial, as acknowledged by the State on appeal, 'the State elected to proceed with the "entering into" language of the [aggravated burglary] statute.' As a result, at the conclusion of the trial evidence, the State in the present case and in *Daws* proceeded under the prosecution theory that each defendant committed aggravated burglary based upon that defendant's entry into an unoccupied residence which was later occupied by the resident who interrupted the burglar." *Montgomery*, 2016 WL 7428308, at *2.

The State distinguishes *Montgomery*, showing that the only theory it advanced at Lozano's trial and supported by the facts of record was that Lozano committed aggravated burglary by remaining in the home after a person entered the home.

The State did not, however, expressly include the "remaining within" theory in its requested jury instructions. Those instructions, as in *Daws*, stated only the "entering into" means.

The State argues that the added paragraph constitutes an instruction on the "remaining within" means. This argument was rejected in *Daws*, which held that use of a

6

paragraph nearly identical to the one used here constitutes reversible error when the defendant is charged with only the "entering into" means of aggravated burglary. 303 Kan. at 786. The instruction in *Daws* concluded with the text of one of the Notes on Use for PIK Crim. 4th 58.130. "'When a person enters the premises after the burglary has commenced but before the defendant has left the premises, the offense constitutes aggravated burglary.'" *Daws*, 303 Kan. at 791, 794. Our Supreme Court concluded that this was an accurate statement of the law but was "too broad if read to apply to both means," and reversed the conviction. 303 Kan. at 791. *Daws* teaches that it is not sufficient to instruct on one means, such as entering, then try to work the other means into the elements via a statement of law, even if that statement of law is accurate.

This court applied *Daws* in *Montgomery*. There, we rejected an argument that language similar to the language used in Lozano's case constituted an instruction on "remaining within." At the request of the State and without objection by Montgomery, language was added to the standard PIK instruction. That language stated that the defendant entered a residence and "'[t]hat during the time of the unauthorized entry, there was a human being in the residence.'" *Montgomery*, 2016 WL 7428308, at *3. We found that language to be a hybrid approach which tried to integrate both Montgomery's entry (when no one was present in the dwelling) and his remaining inside the dwelling (when a person arrived and entered the residence). We found that hybrid approach "not consonant with *Daw*'s either/or bright-line approach." 2016 WL 7428308, at *3. We also found that because the instruction still focused on Montgomery's entry and did not reference the separate "remaining within" aspect of aggravated burglary, the modified language was ambiguous.

The instruction here suffers from the same defects. Entering into and remaining within are alternative means. *Daws*, 303 Kan. at 789. As such, they warrant separate instructions or an instruction in the alternative. Neither was given here. The language stating that "a human being is considered to be in the building if the human being enters

7

the building at any point in time while the person committing the crime of aggravated burglary is present in the building" is confusing when read together with the rest of the instruction only on "entering."

Even though *Daws* was decided after Lozano's case was tried, the State was aware of the distinction between the two means of committing aggravated burglary. At the time Lozano was tried, the Notes on Use for PIK Crim. 4th 58.130 clearly distinguished between "entering into" and "remaining within," stating:  "The phrases 'entering into' and 'remaining within' refer to distinct factual situations. This instruction should employ *only* the phrase which is descriptive of the factual situation where the evidence is clear." (Emphasis added.) PIK Crim. 4th 58.130, Notes on Use. And the first of the five claims or elements to be proved, as then stated by the PIK instruction, provided the State with two alternative phrases, stating:  "The defendant [(entered) (remained in)] a . . ." PIK Crim. 4th 58.130. In light of the uncontroverted testimony that Lozano entered the home before the homeowner returned, the "remaining within" means of committing aggravated burglary was the appropriate charge. Nonetheless, the instruction employed only the phrase "entered." This was error.

The State next invites us to find that the three-Justice dissent in *Daws* was correct in finding that "entering into" and "remaining within" are not alternative means but are merely different factual ways to meet one element. See *Daws*, 303 Kan. at 794-95 (Luckert, J., dissenting; joined by Rossen and Stegall, JJ.) But to do so, we would have to find *Daws*' majority to be incorrect. This we cannot do, despite what may be the logical appeal of that position, since we are bound by our Supreme Court's decision absent some indication the court is departing from its previous position. *State v. Singleton*, 33 Kan. App. 2d 478, 488, 104 P.3d 424 (2005). We find no such indication. Accordingly, we find that Lozano's jury was improperly instructed.

The State does not contend that this error was harmless, thus we must reverse Lozano's conviction of aggravated burglary. The State does request, however, that if we reverse the aggravated burglary conviction, we remand the case for resentencing on the lesser included offense of burglary, as was done in *Montgomery*. We believe this approach is appropriate where, as here, the facts warrant it. See *State v. Wilt*, 273 Kan. 273, 277-78, 44 P.3d 300 (2002) (reversing a conviction for aiding and abetting the sale of marijuana within 1,000 feet of a school because the evidence was insufficient to establish proximity, but remanding with directions to resentence Wilt for the lesser included offense of sale of marijuana because the State had met its burden to prove the elements of that crime); *State v. Kingsley*, 252 Kan. 761, 782, 851 P.2d 370 (1993) (finding evidence insufficient to support aggravated arson because the structure was not occupied by a living person so remanding with order to resentence defendant for simple arson); *State v. Moss*, 221 Kan. 47, 50, 557 P.2d 1292 (1976) (finding evidence insufficient to support attempted felony theft because the State did not prove value was at least $50 so remanded with directions to resentence defendant for attempted misdemeanor theft).

*Sufficiency of the evidence to support the lesser included offense of burglary*

Accordingly, we examine the sufficiency of the evidence to support a conviction for the lesser included offense of burglary. Burglary has the same elements as aggravated burglary except it does not require the presence of a person.

Burglary is a specific intent crime. Lozano argues that the evidence is insufficient to prove that he had an intent to commit a theft at the time he entered the residence and that he *intentionally* remained within the home after Palacios entered. Lozano has not shown that "intentionally remaining" is, in fact, an element of the crime, and the jury was not instructed that it was. Lozano fails to support this argument with any citation to legal authority. Not citing any supporting authority is akin to failing to brief the issue.

9

*University of Kan. Hosp. Auth. v. Board of Comm'rs of Unified Gov't*, 301 Kan. 993, 1001, 348 P.3d 602 (2015). And issues not briefed are deemed waived or abandoned. *Superior Boiler Works, Inc. v. Kimball*, 292 Kan. 885, 889, 259 P.3d 676 (2011).

We thus consider only whether the State introduced sufficient evidence to convince us that a rational jury could find that Lozano had an intent to commit theft when he entered Palacios' home. Lozano argues that if he had any intent to commit theft, it arose only later, in the aftermath of the struggle with Palacios.

*The governing law*

When the sufficiency of the evidence is challenged in a criminal case, we view the evidence in the light most favorable to the prosecution and will affirm if we are convinced that a rational factfinder could have found the defendant guilty beyond a reasonable doubt. In making a sufficiency determination, we do not reweigh evidence, resolve evidentiary conflicts, or make determinations regarding witness credibility. *State v. Stafford*, 296 Kan. 25, 53, 290 P.3d 562 (2012).

Cases often lack direct evidence of a person's intent, so circumstantial evidence may be used to convict a defendant. *State v. Thach*, 305 Kan. 72, 84, 378 P.3d 522 (2016) (interpreting K.S.A. 2015 Supp. 21-5202[h], defining the culpable mental state of "with intent" as consistent with common law that does not require intent to be proved by direct evidence). "'Circumstantial evidence tends to prove a fact in issue by proving other events or circumstances which afford a basis for reasonable inference by the jury of the occurrence of the fact in issue.'" *State v. Evans*, 275 Kan. 95, 105, 62 P.3d 220 (2003). "A conviction of even the gravest offense can be based entirely on circumstantial evidence and the inferences fairly deductible therefrom. If an inference is a reasonable one, the jury has the right to make the inference." *State v. Rosa*, 304 Kan. 429, Syl. ¶ 2, 371 P.3d 915 (2016).

Each case addressing a sufficiency argument must be decided on its unique facts, but our Supreme Court has identified the following facts and circumstances as relevant to support a reasonable inference of intent to commit a theft:  (1) the manner of the entry; (2) the time of day; (3) the character and contents of the building; (4) the person's actions after entry; (5) the totality of the surrounding circumstances; and (6) the intruder's explanation, if he or she decides to give one. *State v. Harper*, 235 Kan. 825, 828-29, 685 P.2d 850 (1984). We examine these factors below.

As to manner of entry, Palacios testified that a green lawn chair had been moved under a window to one of the children's bedrooms and that the screen of that window had been cut. The manner of entry was thus surreptitious. As to time, the entry did not occur at night, but occurred about 3 p.m.—a time when Palacios was at work, where Lozano may have expected him to be. As to the third factor, character of the building, it was a residential home.

The fourth factor, the defendant's actions after entry, are undisputed. Palacios testified that he found Lozano in the basement, sitting against the water heater with his head down. A tequila bottle with Lozano's fingerprint was nearby, as well as Palacios' laptop computer. The PlayStation 4 console had been moved but not taken. Palacios did not testify that he saw Lozano with any of the items he reported missing. Lozano picked up the laptop but instead of leaving the home with it, he retreated to the basement.

Lozano focuses on the fact that Palacios did not see him with any of the items reported missing. But the jury convicted Lozano of theft, so it necessarily found that Lozano took some items from Palacios' home. Lozano does not challenge the theft conviction on appeal and cannot now attack the factual basis of that conviction. The jury's verdict finding him guilty of theft supports an inference that Lozano entered the home with intent to commit theft.

11

The fifth factor is the intruder's explanation for his or her presence, "if he or she decides to give one." *Harper*, 235 Kan. at 830. Lozano decided to give an explanation here. Palacios testified that when he asked Lozano what he was doing there, Lozano told him to be quiet because the police were looking for him. On appeal, Lozano offers two different explanations for his presence: that he "entered the home to obtain information from the home computer" and that it was a "drunken attempt to obtain some upper hand in the custody dispute." But neither of those explanations was presented at trial, even in his counsel's arguments. The sole explanation given to the jury was through Palacio's testimony that he asked Lozano what he was doing there and Lozano replied that the police were looking for him. That explanation does nothing to refute an inference that Lozano was there to steal something. Instead, it evidenced a consciousness of guilt from which the jury could infer a felonious purpose. See *Harper*, 235 Kan. at 831 (finding appellants' statement to police that they "gave up" evidenced "'a consciousness of guilt from which the jury could further infer a felonious purpose, the same as if the Appellants had fled'").

Finally, we examine the totality of the evidence. The only other relevant fact is Lozano's flight, which may evidence a consciousness of guilt. See *Harper*, 235 Kan. at 831. Evidence of a defendant's flight or attempted flight is relevant to show both the commission of the acts charged and the intent and purpose for which those acts were committed. *State v. Phillips*, 295 Kan. 929, 947-48, 287 P.3d 245 (2012).

We find the facts introduced at trial sufficient to prove Lozano had an intent to commit a theft at the time he entered the residence. See *Harper*, 235 Kan. at 831 ("'In the absence of evidence that this forced entry was made with some lawful intent, we think that the intent to commit a felony may be reasonably inferred from the time, force, and manner in which the entry here was made.'"); *State v. Wilson*, 45 Kan. App. 2d 282, 289, 246 P.3d 1008 (2011) (finding sufficient evidence of intent for the jury to convict him of burglary even though he was not found guilty of theft).

12

In conclusion, the only insufficiency in the evidence in this case related specifically to the charge of aggravated burglary and the presence of another person at the time of Lozano's unauthorized entry into the house. In all other respects, we are convinced that based on the evidence a rational factfinder could have found the defendant guilty beyond a reasonable doubt of the offense of burglary in violation of K.S.A. 2011 Supp. 21-5807(a)(1).

We thus reverse the conviction of aggravated burglary, vacate the sentence, and remand the case with directions to resentence Lozano for the lesser included offense of burglary.