No. 125,992

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

ERIK NAHSHON DIXON,
*Appellant*.

SYLLABUS BY THE COURT

1.

The Kansas Racketeer Influenced and Corrupt Organization (RICO) Act, K.S.A. 21-6327 et seq., is substantially similar to the federal Racketeer Influenced and Corrupt Organization (RICO) Act, 18 U.S.C. § 1961 et seq., both in its purpose and the specific conduct it proscribes.

2.

The Kansas RICO Act's definition of racketeering activity includes juvenile adjudications.

3.

A Kansas RICO offense is a continuing offense. Under the Kansas RICO Act, the State can charge the defendant as an adult when some of the alleged predicate racketeering activity occurred when the defendant was a juvenile provided that the final alleged predicate racketeering activity occurred when the defendant was an adult.

1

4.

The Double Jeopardy Clauses of the United States Constitution and section 10 of the Kansas Constitution Bill of Rights do not prohibit the use of the defendant's prior adjudications and convictions to prove a charge under the Kansas RICO Act.

5.

Under the Kansas RICO Act, the defendant's predicate offenses used to establish a pattern of racketeering activity are not lesser included crimes of the RICO offense.

6.

Under the Kansas RICO Act, the compulsory joinder rule does not require the State to bring the RICO charge when it brings the predicate cases used to establish the pattern of racketeering activity in the RICO charge.

Appeal from Sedgwick District Court; JEFFREY E. GOERING, judge. Oral argument held March 5, 2024. Opinion filed March 29, 2024. Affirmed.

*James M. Latta*, of Kansas Appellate Defender Office, for appellant.

*Matt J. Maloney*, assistant district attorney, *Marc Bennett*, district attorney, and *Kris W. Kobach*, attorney general, for appellee.

Before GARDNER, P.J., MALONE, J., and TIMOTHY G. LAHEY, S.J.

MALONE, J.:  Erik Nahshon Dixon began committing crimes with his street gang, the Insane Crips, as a juvenile, and he continued as he grew into adulthood. Eventually, the State charged Dixon with violating the Kansas Racketeer Influenced and Corrupt Organization (RICO) Act, K.S.A. 21-6327 et seq., due to his pattern of criminal activity, some of which was committed as a juvenile and some as an adult. A jury convicted Dixon as charged, and the district court sentenced him to 138 months' imprisonment.

2

On appeal, Dixon raises statutory and constitutional arguments, including: (1) juvenile adjudications do not qualify as racketeering activities under the Kansas RICO statutes; (2) the State needed to charge him in juvenile court because his pattern of racketeering activities began when he was a juvenile; (3) the Double Jeopardy Clause prohibits the use of prior adjudications and convictions to prove a RICO offense, (4) the predicate offenses that established his pattern of racketeering activity were lesser included crimes of the RICO offense, and (5) the compulsory joinder rule required the State to bring the Kansas RICO charge when it brought the predicate charges. Dixon also challenges the sufficiency of the evidence to support his conviction. This case raises issues of first impression in Kansas as no prior appellate court decision has addressed a defendant's conviction under the Kansas RICO Act. For the reasons explained below, we reject Dixon's claims and affirm the district court's judgment.

FACTUAL AND PROCEDURAL BACKGROUND

Dixon, born in 1996, became a documented member of the Insane Crips in 2012 after he was arrested with other gang members six times and then self-identified as a member of the gang. Dixon continued to be involved in criminal activity associated with the gang over the next several years. Dixon turned 18 in 2014.

By 2016, the Wichita Police Department's gang unit began investigating Dixon and several others in connection with a series of gang related shootings that had occurred in the city. The investigation disclosed that Dixon's house had been the target of two shootings earlier that year. In between those two shootings, Dixon and several of his fellow gang members were suspected of being involved in a retaliatory shooting of a rival gang member's house. As part of the investigation, law enforcement obtained search warrants for Dixon's Facebook account and phones. These searches provided law enforcement with information suggesting that Dixon was looking to find and retaliate against those responsible for the shootings at his house.

3

Within the Insane Crips organization, Dixon was considered by police to be at the top of the pecking order when it came to the business side of the enterprise, specifically, selling drugs. In November 2016, law enforcement executed a search warrant at Dixon's apartment, finding many drugs, a ledger, firearms, and cash. Another search warrant, executed in April 2017, yielded more drugs, firearms, and cash. These discoveries led to a federal case against Dixon, in which he pled guilty to possession of a firearm in furtherance of a drug trafficking crime and was sentenced to 120 months' incarceration.

In July 2019, the State charged Dixon and eight others with violating the Kansas RICO Act. The State alleged that Dixon, while a member of a criminal street gang, the Insane Crips, conducted or participated directly or indirectly in a pattern of racketeering activity. The State alleged that the pattern of activity included:

"Racketeering Activity A: Use of Guns
"1. Criminal Use of Weapons Pursuant to K.S.A. 21-6301(a)(14)(b)(5)(A), adjudicated in the 18th Judicial District Court in 13JV1062 on 12/13/13;
"2. Criminal Use of Weapons Pursuant to K.S.A. 21-6301(a)(14)(b)(5)(A), adjudicated in the 18th Judicial District Court in 14JV248 on 5/22/14;

"Racketeering Activity B: Distribution of Drugs
"1. Possession of Marijuana pursuant to K.S.A. 21-5706, convicted in the 18th Judicial District Court in 14CR3189 on 1/7/15;
"2. Carrying a Concealed Weapon pursuant to K.S.A. 21-6302, convicted in the 18th Judicial District Court in 14CR3189 on 1/7/15; (left in distribution of drugs since same case and had 9 individual bags of marijuana, scale and money and the gun[.]"

Relevant to this appeal, two of the predicate offenses included in "Racketeering Activity A: Use of Guns" were juvenile adjudications. In 2013, Dixon pled guilty to one count of criminal use of a weapon in violation of K.S.A. 21-6301(a)(14). In 2014, Dixon pled guilty to another count of criminal use of a weapon under the same statute.

4

Before trial, Dixon moved to dismiss the State's case on several grounds. First, he claimed that the Double Jeopardy Clause required dismissal because he had already been prosecuted for the predicate offenses listed in the charging document. Second, he asserted that the case should be dismissed under the compulsory joinder rule, as he alleged that the State "had to bring the RICO charge" when it prosecuted the predicate offenses. Finally, Dixon claimed that the State should not be allowed to use the two juvenile adjudications as predicate offenses, noting that the State had not moved to prosecute him as an adult in the juvenile cases. The State filed a detailed response addressing each claim.

The district court denied the motion to dismiss in a ruling announced from the bench. As to double jeopardy, the district court ruled that there was no unitary conduct because the "pattern offenses all stem from events that occurred at different dates in different locations" and that there was no "same offense" at issue because there are different elements in the Kansas RICO crime when compared to the prior adjudications and convictions. As to the compulsory joinder claim, the district court found that the State could not have presented evidence of any Kansas RICO violation at the prior proceedings. And lastly, the district court found that the State properly brought the Kansas RICO charge in adult court because the RICO charge was a continuing crime and at least one of Dixon's predicate offenses occurred when he was an adult.

Dixon's case proceeded to a jury trial and he was tried alone. The State offered into evidence, without objection from Dixon, the journal entries from Dixon's prior adjudications and convictions. The parties agreed that Dixon's two adult convictions in 14CR3189 would count as one predicate offense and for that predicate offense the State would need to prove that Dixon carried a concealed weapon *or* possessed marijuana. The State presented testimony from many Kansas and federal law enforcement officers who had helped investigate Dixon and his gang as well as an informant from a rival gang. The State's witnesses also testified to Dixon's alleged involvement in several gang related shootings in Wichita and his arrests while in possession of guns and narcotics with fellow

5

gang members. The crux of the State's case centered on Dixon's involvement as a member of the Insane Crips and his participation in both drug dealing and violent crimes for the gang. Dixon did not testify at trial and did not contest his membership in the Insane Crips. The theme of defense counsel's closing argument was that the predicate offenses were isolated incidents unrelated to gang membership and did not meet the statutory definition of a pattern of racketeering activity.

The jury found Dixon guilty as charged. The district court sentenced him to 138 months' imprisonment. Dixon timely appealed the district court's judgment.

OVERVIEW OF THE KANSAS RICO ACT AND COMPARISON TO FEDERAL LAW

The Kansas RICO Act is substantially similar to the federal Racketeer Influenced and Corrupt Organization (RICO) Act, 18 U.S.C. § 1961 et seq., both in its purpose and the specific conduct it proscribes. Anti-racketeering statutes target organized crime and the individuals who participate in criminal enterprises in a broad spectrum of illegal activities. They present tools for law enforcement to combat the negative effects of patterns of criminal activities conducted by criminal groups. In enacting the federal RICO Act, Congress stated: "It is the purpose of this Act to seek the eradication of organized crime . . . by strengthening the legal tools in the evidence-gathering process, by establishing new penal prohibitions, and by providing enhanced sanctions and new remedies to deal with the unlawful activities of those engaged in organized crime." Organized Crime Control Act of 1970, Statement of Findings and Purpose, 84 Stat. 922, reprinted in 1970 U.S. Code Cong. & Ad. News at 1073.

In 2013, the Kansas Legislature passed a similar antiracketeering statute, providing similar tools for Kansas law enforcement to combat organized crime. As explained in testimony presented to the Legislature when it considered enacting the

Kansas RICO Act, the successful use of the federal RICO Act by the federal government was a motivating factor for the Kansas Act's passage:

"[R]acketeering laws are based on the notion that with some criminal enterprises, the whole is greater than the sum of the parts—and, therefore, should be subject to greater penalties. A criminal street gang, for example, may commit numerous low-level crimes, but the *pattern* of criminal activity has a much greater negative effect on the community and on innocent residents than does any individual crime taken by itself. The federal government has successfully used the federal RICO statute to combat criminal street gangs, including those in Kansas. Giving Kansas law enforcement officials access to this tool at the state level would be a powerful step forward in our anti-gang efforts." Testimony of Attorney General Derek Schmidt, Senate Judiciary Committee, January 29, 2013.

Beyond the fact that both the federal and Kansas RICO Acts were enacted for the same purpose, their elements are nearly identical, at least as to the charge against Dixon. The federal RICO Act provides:

"It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt." 18 U.S.C. § 1962(c).

The Kansas RICO Act states: "[I]t is unlawful for any covered person: . . . employed by, or associated with, any enterprise to recklessly conduct or participate, directly or indirectly, in such enterprise through a pattern of racketeering activity or the collection of an unlawful debt." K.S.A. 21-6329(a)(3). The Kansas RICO Act defines "covered person" to include "a criminal street gang member." K.S.A. 21-6328(b)(1).

Although the Kansas RICO Act is not identical to its federal counterpart, the definition of a "pattern of racketeering activity" closely mirrors the federal act—both

7

define the term as engaging in at least two predicate incidents or acts of racketeering activity. Compare K.S.A. 21-6328(e) with 18 U.S.C. § 1961(5). But the Kansas statute goes a step further in specifying that the activities must have "the same or similar intents, results, accomplices, victims or methods of commission or that otherwise are interrelated by distinguishing characteristics and are not isolated incidents." K.S.A. 21-6328(e). That said, this additional language in the Kansas RICO Act generally tracks how the language in the federal act is construed. See *H.J. Inc. v. Northwestern Bell Telephone Co.*, 492 U.S. 229, 240, 109 S. Ct. 2893, 106 L. Ed. 2d 195 (1989) (noting that in the RICO context "'[c]riminal conduct forms a pattern if it embraces criminal acts that have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events'").

The similarities in purpose and structure between the Kansas RICO Act and the federal RICO Act on which it is based makes federal caselaw addressing similar challenges to those raised by Dixon particularly persuasive.

## ARE JUVENILE ADJUDICATIONS INCLUDED IN THE DEFINITION OF "RACKETEERING ACTIVITY" UNDER THE KANSAS RICO ACT?

Dixon contends that juvenile offenses, such as the two predicate adjudications the State included in the RICO offense he was charged with committing, are not included in the definition of "racketeering activity" under the Kansas RICO Act. Thus, he argues that he was convicted of a nonexistent crime and either the district court lacked subject matter jurisdiction or the State presented insufficient evidence to support his conviction. Dixon argues that the applicable statutes are unambiguous, but if there is any ambiguity he prevails under the rule of lenity. He urges this court to reverse his conviction, vacate his sentence, and dismiss the charge. The State maintains that Dixon's argument is contrary to the plain language of the Kansas RICO Act—that is, that the definition of "racketeering activity" in K.S.A. 21-6328(f)(1) encompasses juvenile adjudications.

8

Whether subject matter jurisdiction exists is a question of law subject to unlimited review. *State v. Dunn*, 304 Kan. 773, 784, 375 P.3d 332 (2016). To the extent this court must interpret the statutory language of the Kansas RICO Act to address Dixon's claim, it will exercise unlimited review. *State v. Betts*, 316 Kan. 191, 197, 514 P.3d 341 (2022). The principles of statutory interpretation are well-established:

> "The most fundamental rule of statutory construction is that the intent of the Legislature governs if that intent can be ascertained. In ascertaining this intent, a court begins with the plain language of the statute, giving common words their ordinary meaning. When a statute is plain and unambiguous, a court should not speculate about the legislative intent behind that clear language, and it should refrain from reading something into the statute that is not readily found in its words. But if a statute's language is ambiguous, a court may consult canons of construction to resolve the ambiguity." *State v. Eckert*, 317 Kan. 21, Syl. ¶ 6, 522 P.3d 796 (2023).

Dixon's argument requires examination of several statutory provisions. First, the State charged Dixon under K.S.A. 21-6329(a)(3), which states that "it is unlawful for any covered person . . . employed by, or associated with, any enterprise to recklessly conduct or participate, directly or indirectly, in such enterprise through a *pattern of racketeering activity* or the collection of an unlawful debt." (Emphasis added.) The definitional statute, K.S.A. 21-6328(e), provides that a

> "'[p]attern of racketeering activity' means engaging in at least two incidents of racketeering activity that have the same or similar intents, results, accomplices, victims or methods of commission or that otherwise are interrelated by distinguishing characteristics and are not isolated incidents, provided at least one of such incidents occurred after the effective date of this act and that the last of such incidents occurred within five years, excluding any period of imprisonment, after a prior incident of racketeering activity."

9

In turn, K.S.A. 21-6328(f)(1) states:

> "'Racketeering activity' means to commit, attempt to commit, conspire to commit or to solicit, coerce or intimidate another person to commit any:
>
> "(1) *Felony or misdemeanor violation* of [one of a number of listed Kansas criminal offenses]." (Emphasis added.)

Both parties agree that the language of the relevant statutes is unambiguous; they disagree on the meaning of the term "violation." Dixon argues that juveniles "cannot commit felony or misdemeanor violations as a matter of law," and therefore juvenile adjudications cannot be considered racketeering activities. He points out that the Kansas Supreme Court has explained that "'a juvenile adjudication is not a "criminal conviction."'" *In re M.M.*, 312 Kan. 872, 875, 482 P.3d 583 (2021). Dixon is correct that a criminal conviction and a juvenile adjudication are distinct entities, a point well established in Kansas caselaw. See, e.g., *State v. LaMunyon*, 259 Kan. 54, 57, 911 P.2d 151 (1996) ("[A] juvenile proceeding is considered a civil proceeding of a protective nature totally divorced from any criminal implication."); *State v. Crawford*, 39 Kan. App. 2d 897, 901, 185 P.3d 315 (2008). But juvenile adjudications, while not convictions, are still classified as felonies or misdemeanors in determining an offender's criminal history. See K.S.A. 21-6811; K.S.A. 21-6810(a).

While an adjudication is not a conviction, the premise of Dixon's argument that a juvenile cannot commit a felony or misdemeanor violation is based on his conflation of the terms "conviction" and "violation." The Kansas RICO Act does not utilize the word "conviction" in its definition of racketeering activity—the statute uses the phrase: any "[f]elony or misdemeanor *violation*." (Emphasis added.) K.S.A. 21-6328(f)(1). Thus, resolution of this issue turns on whether the term "violation" in K.S.A. 21-6328(f)(1) encompasses both criminal convictions and juvenile adjudications or, as Dixon contends, only includes criminal convictions.

10

As a starting point, we note that the terms "violation" and "conviction"—while related—are not interchangeable. A "violation" is defined as "[a]n infraction or breach of the law; a transgression" or "[t]he act of breaking or dishonoring the law." Black's Law Dictionary 1881 (11th ed. 2019). On the other hand, a "conviction" is defined as "[t]he act or process of judicially finding someone guilty of a crime; the state of having been proved guilty" or "[t]he judgment (as by a jury verdict) that a person is guilty of a crime." Black's Law Dictionary 422 (11th ed. 2019). These definitions show that the term "violation" as used in the Kansas RICO Act encompasses a broader meaning than "conviction." Whereas a conviction specifically signifies the legal process of having been found guilty, a violation simply means the contravention of some law.

Dixon points out that the Kansas RICO Act's definition of racketeering activity does not explicitly reference juvenile offenses or adjudications and asserts that this omission signifies that adjudications were purposefully not included in the definition. But the Act also omits the term "conviction." Had the Legislature referred to convictions in defining an instance of racketeering activity, a fair reading would be that it had intended to exclude juvenile adjudications. Accord *State v. Boyer*, 289 Kan. 108, 116, 209 P.3d 705 (2009) (holding that a reference to convictions under a statute did not encompass juvenile adjudications). Instead, in drafting the Kansas RICO Act, the Legislature used the broader phrase: "Felony or misdemeanor *violation*." (Emphasis added.) K.S.A. 21-6328(f)(1). The fact that the statute does not distinguish between adult convictions or juvenile adjudications suggests that racketeering activity is not limited to adult convictions but encompasses any violations of the listed offenses. Significantly, the State routinely charges juvenile offenders with violating many of the listed criminal offenses in K.S.A. 21-6328(f)(1).

In a final attempt to support this claim, Dixon points to K.S.A. 38-2302(s), which defines "juvenile offender" in relevant part as

11

"a person who commits an offense while 10 or more years of age but less than 18 years of age which if committed by an adult would constitute the commission of a felony or misdemeanor . . . or who violates the provisions of K.S.A. 41-727, K.S.A. 74-8810(j) or K.S.A. 21-6301(a)(14), and amendments thereto."

Dixon asserts that the phrase "which if committed by an adult would constitute the commission of a felony or misdemeanor" indicates that only adults can commit felonies and misdemeanors, as he claims such language would be unnecessary if juveniles can commit such offenses. But when K.S.A. 38-2302(s) is read in its entirety, the statute is communicating a simple point: the term "juvenile offender" includes not only juveniles who commit any act that would be a felony or misdemeanor if committed by an adult, but also juveniles who commit certain acts (e.g., consumption of an alcoholic beverage under K.S.A. 41-727) that would not be illegal for adults.

The federal RICO Act's definition of "racketeering activity" does not use the language "felony or misdemeanor violation," but it defines the term to mean, in part, "*any act . . .* which is chargeable under State law and punishable by imprisonment for more than one year." (Emphasis added.) 18 U.S.C. § 1961(1). Similar to the Kansas RICO Act, the federal act's definition of racketeering activity does not use the term conviction. As we will discuss more in the next section of this opinion, federal courts allow juvenile offenses to be included in the definition of racketeering activity. See, e.g., *United States v. Wong*, 40 F.3d 1347, 1364 (2d Cir. 1994) (upholding defendant's RICO conviction when the pattern of racketeering activity included five acts, only one of which was committed when defendant was an adult).

A defendant's commission of, attempt to commit, conspiracy to commit, or coercion of another person to commit any of the listed felony and misdemeanor offenses constitutes an instance of racketeering activity. K.S.A. 21-6328(f). As such, proof that a defendant breached any one of the listed felony or misdemeanor offenses, whether as an

12

adult or a juvenile, qualifies as racketeering activity. The plain language of K.S.A. 21-6328(f)(1), specifically its use of the broad term "violation," demonstrates that the Legislature did not intend to limit the definition of "racketeering activity" to mean only adult convictions. We find that the Kansas RICO Act's definition of racketeering activity includes juvenile adjudications. Thus, we conclude the State did not charge Dixon with a nonexistent crime, and the district court had subject matter jurisdiction over Dixon's case.

Alternatively, Dixon briefly argues that because juvenile adjudications are not included in the definition of "racketeering activity" under the Kansas RICO Act, the State presented insufficient evidence to support his conviction. This argument depends on his statutory argument that the State cannot prove racketeering activity through a juvenile offense—an argument we have just found unavailing. As a result, the sufficiency of the evidence claim fails as well. We observe that Dixon also makes a broader argument that there was insufficient evidence to support his conviction if his predicate offenses are not considered unitary conduct under a double jeopardy analysis. We will address that argument later in this opinion.

DID THE STATE NEED TO CHARGE DIXON IN JUVENILE COURT BECAUSE HIS PATTERN OF RACKETEERING ACTIVITY BEGAN WHEN HE WAS A JUVENILE?

Dixon next argues that assuming that juvenile adjudications may be used to establish a pattern of racketeering activity under the Kansas RICO Act, then the district court lacked subject matter jurisdiction because "the State failed to commence a juvenile case before seeking an adult criminal prosecution." He contends that because the State alleged that his two juvenile adjudications for criminal use of a weapon constituted "racketeering activities" in its RICO charge, the State needed to bring the RICO charge in juvenile court and then move to prosecute Dixon as an adult.

13

The State counters that the RICO case against Dixon was properly brought because it was a continuing offense and at least one of the predicate racketeering activities occurred when he was an adult, not a juvenile. The State urges this court to follow federal caselaw analyzing and rejecting similar jurisdictional challenges under the federal RICO statute.

Dixon was 23 years old when the State filed its RICO case. The question this court must answer is whether the State must charge an adult defendant with a RICO offense in juvenile court when the alleged pattern of racketeering activity includes acts committed both as a juvenile and as an adult. Whether subject matter jurisdiction exists is a question of law subject to unlimited review. *Dunn*, 304 Kan. at 784. Likewise, statutory interpretation is a question of law subject to unlimited review. *Betts*, 316 Kan. at 197.

In making his argument, Dixon mainly relies on caselaw and statutory authority for when the State may charge a *juvenile* as an adult. He emphasizes K.S.A. 38-2347, which contains the procedure the State must follow to prosecute a juvenile as an adult. Dixon does not contest that he was an adult when he committed some of the alleged acts of racketeering activity and when the State charged him with the RICO offense. He argues that because the RICO charge contained an element that included his prior juvenile offenses, the entire RICO charge should have been considered a juvenile offense.

The State asserts Dixon's argument is misplaced because a RICO offense is a continuing offense—that is, a crime committed over an extended time. The State urges this court to follow federal caselaw analyzing analogous challenges where a defendant was alleged to have committed a pattern of racketeering activity that encompassed both juvenile and adult offenses. Although the Kansas RICO Act does not directly mirror its federal counterpart, the definition a "pattern of racketeering activity" in the federal offense is instructive in considering whether the Kansas version of the crime is a continuing offense. Compare K.S.A. 21-6328(e) with 18 U.S.C. § 1961(5). Both the

14

Kansas RICO Act and the federal RICO Act define a "pattern of racketeering activity" as engaging in at least two incidents or acts of racketeering activity. The fact that the government must prove a "pattern" in at least two acts of racketeering activity to prove a RICO charge supports the State's claim that a RICO offense is a continuing offense.

Each of the federal cases the State cites found that a defendant may be held liable for committing a RICO offense as an adult if the pattern of racketeering activity includes some predicate offenses committed when the defendant was a juvenile and at least one offense was committed when the defendant was an adult. See *United States v. Delatorre*, 157 F.3d 1205, 1209 (10th Cir. 1998); *Wong*, 40 F.3d at 1364-66. In *Wong*, the defendant was convicted of substantive RICO and RICO conspiracy violations—the pattern of racketeering activity included five acts, only one of which was committed when he was an adult. After he was convicted, Wong moved to dismiss, arguing the definition of "pattern of racketeering activity" would not support his convictions absent proof that he had committed two or more predicate acts *as an adult* because any juvenile acts were "outside the jurisdiction of the federal courts and could not constitute RICO predicate acts." 40 F.3d at 1364. The district court denied Wong's motion to dismiss, finding "that substantive RICO and RICO conspiracy were 'continuing crimes,' and that Wong's commission of a single predicate act as an adult was sufficient to establish federal jurisdiction over Wong to be tried as an adult." 40 F.3d at 1364.

On appeal, the Second Circuit affirmed. The *Wong* court noted that under the Juvenile Delinquency Act (JDA), 18 U.S.C. § 5031 et seq., the relevant act for determining jurisdiction is the crime charged in the indictment—i.e., Wong's age *at the time of the RICO offenses charged in the indictment*, not his age when he committed some of the predicate acts contained within the RICO charge. 40 F.3d at 1365. To bolster its conclusion, the *Wong* court analogized Wong's situation with that of a defendant charged with conspiracy—another continuing offense—that began when a defendant was a minor but was completed as an adult. 40 F.3d at 1365-66. In the conspiracy context,

15

federal courts have held that a defendant may be tried as an adult even if the conspiracy began as a minor, so long as they continued to participate in the conspiracy after reaching adulthood. See *United States v. Thomas*, 114 F.3d 228, 238-39 (D.C. Cir. 1997); see also *United States v. Moscony*, 927 F.2d 742, 754 (3d Cir. 1991) (noting that substantive RICO offense is a continuing offense analogous to conspiracy).

In another case reaching the same result, *Delatorre*, 157 F.3d at 1209, the Tenth Circuit held that the government could bring a RICO case against the adult defendant without complying with the JDA even though one of the predicate acts supporting the RICO charges occurred before the defendant became an adult. Because of the continuing nature of the offense, the court found that as long as the government could show *some* participation in racketeering activity as an adult, it did not need to bring a juvenile case under the JDA. 157 F.3d at 1209. The court noted: "No circuit has applied the JDA to an adult conspiracy or racketeering prosecution simply because defendant's participation in the crimes began prior to his eighteenth birthday." 157 F.3d at 1209-10.

We agree with the federal caselaw that a RICO offense is a continuing offense. A continuing offense is defined as "[a] crime (such as a conspiracy) that is committed over a period of time, so that the last act of the crime controls when the statute of limitations begins to run." Black's Law Dictionary 1300 (11th ed. 2019). The Kansas RICO statute that Dixon was convicted under, K.S.A. 21-6329(a)(3), supports a finding that it should be treated as a continuing offense. The statutory language of the offense requires the State to prove a pattern of racketeering activity—two or more acts that occurred over time. Because the criminal conduct the State must prove to secure a conviction under the RICO Act must occur over time, the offense is continuing.

Dixon began committing the RICO offense he was charged with committing as a juvenile, but he continued to participate in racketeering activities after he became an adult. By the time the State charged Dixon with the RICO offense, he had participated in

racketeering activities both as a juvenile and an adult. Because he was an adult at the time he was charged and when he committed the final racketeering activity, the State could charge Dixon as an adult—even though the charge contained two alleged predicate racketeering activities he committed as a juvenile. As a result, the State was not required to bring its case in juvenile court. We conclude that the district court did not lack subject matter jurisdiction and that Dixon was properly charged as an adult.

DOES THE DOUBLE JEOPARDY CLAUSE PROHIBIT THE USE OF PRIOR ADJUDICATIONS AND CONVICTIONS TO PROVE A RICO OFFENSE?

Dixon contends that the Double Jeopardy Clauses of the United States Constitution and section 10 of the Kansas Constitution Bill of Rights prohibit the use of his prior adjudications and convictions to prove a RICO offense. He claims the State cannot use prior convictions or adjudications to prove a pattern of racketeering activity because doing so effectively forced him to face successive prosecutions for the same conduct. The State asserts that because Dixon's RICO offense constitutes a separate, distinct act from his predicate offenses, his double jeopardy argument fails.

The Double Jeopardy Clauses of the Fifth Amendment to the United States Constitution and section 10 of the Kansas Constitution Bill of Rights prohibit the State from securing multiple convictions on multiplicitous charges. *State v. Sprung*, 294 Kan. 300, 306, 277 P.3d 1100 (2012). The Double Jeopardy Clause "protects against: (1) a second prosecution for the same offense after acquittal; (2) a second prosecution for the same offense after conviction; and (3) multiple punishments for the same offense." *State v. Schoonover*, 281 Kan. 453, 463, 133 P.3d 48 (2006). Appellate courts exercise unlimited review when determining whether convictions are multiplicitous. *State v. Davis*, 306 Kan. 400, 419, 394 P.3d 817 (2017).

17

In *Schoonover*, the Kansas Supreme Court provided a framework to determine whether convictions subject a defendant to double jeopardy. "[T]he overarching inquiry is whether the convictions are for the same offense." 281 Kan. at 496. This inquiry is broken into two components, both of which must be met for there to be a double jeopardy violation: (1) Do the convictions arise from the same conduct and, if so, (2) by statutory definition, are there two offenses or only one? 281 Kan. at 496.

As for the first prong of the analysis, if the convictions are not based on the same conduct, the analysis ends. 281 Kan. at 496-97. To determine whether the convictions are based on the same conduct, courts look to:

"(1) whether the acts occur at or near the same time; (2) whether the acts occur at the same location; (3) whether there is a causal relationship between the acts, in particular whether there was an intervening event; and (4) whether there is a fresh impulse motivating some of the conduct." 281 Kan. 453, Syl. ¶ 16.

Only if this court determines that Dixon's actions constituted unitary conduct should it proceed to consider whether, by statutory definition, his conduct constituted one offense or two. See *Sprung*, 294 Kan. at 306-08. Under the second prong of the analysis the test to be applied depends on whether the convictions arise from a single statute or from multiple statutes. *Schoonover*, 281 Kan. at 497-98. If, as here, the convictions are based on different statutes, the convictions are multiplicitous only when the statutes on which the convictions are based contain an identity of elements.

Dixon argues that he faced successive prosecutions because the predicate adjudications and convictions and the RICO charge itself constitute unitary conduct. He asserts that the "Kansas RICO charge completely subsumes all alleged racketeering activities in this case." At trial, the State introduced evidence of Dixon's prior adjudications and convictions as evidence of the requisite predicate acts constituting a

18

pattern of racketeering activity. Dixon objected to the use of these prior violations before, during, and after trial to no avail. The district court explained that the State's use of the adjudications and convictions as predicate offenses in the RICO charge did not implicate double jeopardy concerns because there was no unitary conduct and the elements of the RICO charge and the prior adjudications and convictions were different.

We agree with the district court that Dixon's RICO offense and the predicate adjudications and convictions do not constitute unitary conduct. Granted, the RICO offense requires that the predicate acts amounting to a pattern of racketeering activity are "interrelated by distinguishing characteristics and are not isolated incidents." K.S.A. 21-6328(e). But this does not mean that the activities are a singular course of conduct. The acts underlying Dixon's adjudications and convictions occurred on different dates and at different locations. The first predicate act occurred in 2013 and the final one occurred in 2015. The common characteristic of these predicate acts was Dixon's gang membership, but the individual crimes were separate acts, motivated by fresh impulses, over an extended period of time. The commonality between these acts—their intents, results, Dixon's accomplices, etc.—shows a pattern of racketeering activity, but it does not establish that Dixon's actions were unitary conduct for double jeopardy purposes.

Our analysis could end here. But even if we were to find that the predicate acts and the RICO offense constituted unitary conduct, Dixon is entitled to no relief because the offenses arose from different statutes and there is no identity of elements. The RICO offense requires the State to prove that Dixon committed multiple acts of racketeering. Whereas the RICO statute criminalizes racketeering activities, the predicate offenses the State used to establish the pattern of activity are intended to deter weapons and narcotics violations. As explained in more detail below in the discussion of Dixon's lesser included offense-based argument, there is no identity of elements between the offenses.

19

Federal courts have rejected identical double jeopardy-based challenges to the federal RICO statutes on which the Kansas RICO Act is based. For example, in *United States v. Grayson*, 795 F.2d 278, 282-83 (3d Cir. 1986), the court found that successive prosecutions for a RICO offense and its underlying predicate offenses did not violate the Double Jeopardy Clause. The court observed that federal courts had "uniformly" held that "Congress intended separate convictions or consecutive sentences for a RICO offense and the underlying predicate offense." 795 F.2d at 283. The *Grayson* court noted:

> "'There is nothing in the RICO statutory scheme which would suggest that Congress intended to preclude separate convictions or consecutive sentences for a RICO offense and the underlying or predicate crimes which make up the racketeering pattern. The racketeering statutes were designed primarily as an additional tool for the prevention of racketeering activity, which consists in part of the commission of a number of other crimes. The Government is not required to make an election between seeking a conviction under RICO, or prosecuting the predicate offenses only. Such a requirement would nullify the intent and effect of the RICO prohibitions.'" 795 F.2d at 283 (quoting *United States v. Rone*, 598 F.2d 564, 571 [9th Cir. 1979]).

The Kansas RICO Act was crafted with the intent to provide Kansas law enforcement with tools much like those provided under the federal act. See Testimony of Eric B. Smith, Legal Counsel, League of Kansas Municipalities, Senate Judiciary Committee, January 29, 2013. Additional testimony in support of the Kansas RICO Act presented to the Kansas Legislature by the Attorney General and the Kansas Association of Chiefs of Police underscores that an express purpose of the Act was to provide enhanced penalties for members of enterprises that engage in patterns of criminal activity. See Testimony of Attorney General Derek Schmidt and Ed Klumpp, Kansas Association of Chiefs of Police Legislative Committee Chair, Senate Judiciary Committee, January 29, 2013. As with the federal RICO Act, the legislative history of the Kansas RICO Act demonstrates a legislative intent to permit prosecution for both predicate offenses and the RICO offense to deter criminal enterprises.

In sum, the RICO offense Dixon was charged with committing and the predicate offenses used to establish a pattern of racketeering activity are not the "same" offense; they are all based on different statutes and are intended to deter different kinds of activity. Dixon cannot establish (1) that his RICO conviction and his predicate adjudications and convictions were based on the same conduct or (2) that these offenses contained an identity of elements. As a result, Dixon's double jeopardy-based argument under the federal and Kansas Constitutions must fail.

## WERE THE PREDICATE OFFENSES THAT ESTABLISHED DIXON'S PATTERN OF RACKETEERING ACTIVITY LESSER INCLUDED CRIMES OF THE RICO OFFENSE?

Along with Dixon's double jeopardy argument, he separately brings a statutory claim that the predicate offenses constituted the "'same offense' as the Kansas RICO conviction because the prior adjudications and convictions are lesser included crimes of the Kansas RICO conviction under K.S.A. 21-5109(b)(2)." Dixon argues: "Because Kansas RICO law requires proof of other crimes (racketeering activity) to prove a Kansas RICO crime, the other crimes (racketeering activity) are necessarily lesser included crimes by definition. . . . [E]very element of the other crimes (racketeering activity) are identical to some of the elements of the Kansas RICO conviction."

A lesser included crime is defined, in relevant part, as "a crime where all elements of the lesser crime are identical to some of the elements of the crime charged." K.S.A. 21-5109(b)(2). Whether a crime is a lesser included offense is a question of law subject to unlimited appellate review. *State v. Alderete*, 285 Kan. 359, 361-62, 172 P.3d 27 (2007).

> "The proper analysis to determine whether a crime is a lesser included offense of another crime applies a strict elements test and is limited to a comparison of the abstract elements of the offenses charged. The test no longer takes into account the factual nuances of a specific case as they may bear on satisfaction of the statutory elements of both crimes under examination." 285 Kan. 359, Syl. ¶ 2.

21

Dixon's assertion that the predicate offenses were lesser included offenses of the RICO offense is misplaced. The State presented four violations to establish Dixon's pattern of racketeering activity: two adjudications for criminal use of a weapon in violation of K.S.A. 2018 Supp. 21-6301(a)(14), one conviction for criminal carrying of a weapon under K.S.A. 2018 Supp. 21-6302(a)(4), and one conviction for possession of marijuana under K.S.A. 2018 Supp. 21-5706(b)(3). Each of these offenses contains elements that are not present in the RICO offense, which states that it is unlawful for any covered person "employed by, or associated with, any enterprise to recklessly conduct or participate, directly or indirectly, in such enterprise through a pattern of racketeering activity." K.S.A. 21-6329(a)(3).

In applying the statutory test for lesser included offenses, we examine *strictly* the statutory elements of the crimes. Although each of the predicate offenses have different elements, they all require proof that a defendant possessed or carried weapons or drugs—the RICO offense has no such element. While Dixon is correct that there is some intersection between the predicate offenses and the RICO charge because the predicate offenses must show a pattern of activity, this does not make those offenses lesser included crimes of the RICO charge. The definition of racketeering activity encompasses committing, attempting to commit, conspiring to commit, or soliciting, coercing, or intimidating another person to commit *any of the listed felony or misdemeanor violations*. K.S.A. 21-6328(f). As a result, the State could secure a conviction for the overarching RICO offense without proving that Dixon was in actual or constructive possession of weapons or drugs—an element necessary to establish each of his prior adjudications and convictions. Thus, not all the elements of the lesser crime are identical to some elements of the crime charged, as contemplated under K.S.A. 21-5109(b)(2).

Dixon makes three separate claims related to his argument that his predicate offenses were lesser included crimes of the RICO charge, so we will address them here. First Dixon claims that K.S.A. 21-5109(c), part of the statute addressing lesser included

22

crimes, prevented the State from offering as evidence at trial the journal entries showing his pleas to his predicate offenses. K.S.A. 21-5109(c) states in full:

> "Whenever charges are filed against a person, accusing the person of a crime which includes another crime of which the person has been convicted, the conviction of the lesser included crime shall not bar prosecution or conviction of the crime charged if the crime charged was not consummated at the time of conviction of the lesser included crime, but the conviction of the lesser included crime shall be annulled upon the filing of such charges. *Evidence of the person's plea or any admission or statement made by the person in connection therewith in any of the proceedings which resulted in the person's conviction of the lesser included crime shall not be admissible at the trial of the crime charged.* If the person is convicted of the crime charged, or of a lesser included crime, the person so convicted shall receive credit against any prison sentence imposed or fine to be paid for the period of confinement actually served or the amount of any fine actually paid under the sentence imposed for the annulled conviction." (Emphasis added.)

The State asserts that this court should not reach this issue because Dixon did not object to the evidence when the journal entries were offered at trial. Dixon readily admits that he failed to object to the admission of the journal entries when they were offered at trial, but he asserts this court should address this issue because it involves only a question of law arising on admitted facts and is finally determinative of the case. See, e.g., *State v. Phillips*, 299 Kan. 479, 493, 325 P.3d 1095 (2014) (listing commonly recognized exceptions courts apply to consider unpreserved claims).

K.S.A. 60-404 provides: "A verdict or finding shall not be set aside . . . by reason of the erroneous admission of evidence unless there appears of record objection to the evidence timely interposed and so stated as to make clear the specific ground of objection." As the State notes, Kansas courts have long stressed the importance of the legislative mandate contained in K.S.A. 60-404, which, under its plain language, requires a contemporaneous objection for an evidentiary claim to be reviewed on appeal. *State v. King*, 288 Kan. 333, 349, 204 P.3d 585 (2009). In *State v. Carter*, 312 Kan. 526, 535, 477

23

P.3d 1004 (2020), the Kansas Supreme Court explicitly stated: "Exceptions exist for raising issues on appellate review without expressing an objection to the trial court, but K.S.A. 60-404 does not allow those exceptions to come into play in the context of the admissibility of evidence." Because Dixon did not make a timely and specific objection to the admission of the evidence as required by K.S.A. 60-404, and there are no exceptions to this rule, we cannot address Dixon's evidentiary claim on appeal.

Second, Dixon claims that this court must "annul" the prior adjudications and convictions that were lesser included offenses of the RICO charge. Dixon again points to K.S.A. 21-5109(c) which mandates that "the conviction of the lesser included crime shall be annulled upon the filing of such charges." Dixon's argument on this point depends on his assertion that his prior adjudications and convictions that established his pattern of racketeering activity were lesser included crimes of the RICO offense. But because Dixon's prior adjudications and convictions were not lesser included crimes of the RICO offense, Dixon's annulment argument under K.S.A. 21-5109(c) fails.

Third, Dixon claims that he is entitled to jail credit for any time he spent incarcerated for his prior adjudications and convictions that established his pattern of racketeering activity. He again refers to K.S.A. 21-5109(c) which states: "If the person is convicted of the crime charged, or of a lesser included crime, the person so convicted shall receive credit against any prison sentence imposed . . . for the annulled conviction." This argument once again depends on Dixon's assertion that his prior adjudications and convictions were lesser included crimes of the RICO offense—they were not. Moreover, Dixon's claim is speculative because he merely asserts that it is *likely* that he served a period of confinement for his prior adjudications and convictions—but there is no settled record to determine the amount of jail credit he would theoretically receive.

24

Dixon contends, under the compulsory joinder rule, that the State was required to bring its RICO charge against him when it brought the cases used to establish the pattern of racketeering activity in the RICO charge. Dixon acknowledges that his claim must fail under *State v. Wilkins*, 269 Kan. 256, 7 P.3d 252 (2000), but he contends that case was wrongly decided and should be overturned. This court exercises unlimited review when analyzing compulsory joinder issues and interpretation of the statute where the rule is set forth, K.S.A. 21-5110. *State v. Jordan*, 303 Kan. 1017, 1018, 370 P.3d 417 (2016).

"'Under the compulsory joinder rule, if evidence is admitted of an offense not contained in the charge, later prosecution of that offense is barred if it could have been included as an additional count in the first prosecution.'" 303 Kan. at 1019. The rule seeks to prevent the State from proving a crime that it did not charge in a first trial and then prosecuting the defendant again in a later trial using the same evidence that was presented in the earlier trial. *Wilkins*, 269 Kan. 256, Syl. ¶ 2. Three elements must be established for a prosecution to be barred under the compulsory joinder rule:  "(1) The prior prosecution must have resulted in either a conviction or an acquittal; (2) evidence of the present crime must have been introduced in the prior prosecution; and (3) the present crime must be one which could have been charged as an additional count in the prior case." 269 Kan. at 260; *Jordan*, 303 Kan. at 1020.

Relevant here, the second element requires the defendant to "show that the evidence presented at the first trial, when viewed in a light most favorable to the defendant, *would* lead a rational factfinder to find the defendant guilty beyond a reasonable doubt of the crimes in the second trial." (Emphasis added.) *Wilkins*, 269 Kan. at 263. The Kansas Supreme Court later modified this test in *Jordan*, 303 Kan. at 1021-22, requiring the defendant to simply show that the evidence at the first trial *could* lead a

25

rational fact-finder to find guilt beyond a reasonable doubt of the crimes in the second trial. Dixon admits he cannot satisfy this element. Dixon argues that *Jordan* and *Wilkins* are "clearly erroneous based on the plain language of [K.S.A. 21-5110(b)(1)]," but acknowledges that this court is duty bound to follow Kansas Supreme Court precedent absent some indication that the court is departing from its previous position. See *State v. Rodriguez*, 305 Kan. 1139, 1144, 390 P.3d 903 (2017). Dixon has not provided any specific argument to establish any such departure.

Dixon cannot show that a rational fact-finder could find him guilty beyond a reasonable doubt of the RICO charge based on the evidence presented at the trials for his predicate offenses. Under Kansas Supreme Court precedent that this court is duty bound to follow, Dixon's claim under the compulsory joinder rule fails.

SUFFICIENCY OF THE EVIDENCE

Dixon argues that if this court finds that his "pattern of racketeering activity" did not constitute unitary conduct—as addressed in his double jeopardy-based argument above—the State must have presented insufficient evidence to support his RICO conviction because his predicate offenses were necessarily isolated, and not a pattern of activity. The State asserts that Dixon's sufficiency of the evidence claim fails because it is based on the incorrect premise that separate criminal acts under a double jeopardy analysis cannot be part of a pattern of racketeering activity.

When a defendant challenges the sufficiency of the evidence to support their conviction(s), an appellate court examines the evidence in a light most favorable to the State and determines whether a trier of fact could have found the essential elements of the charge beyond a reasonable doubt. *State v. Sieg*, 315 Kan. 526, 530-31, 509 P.3d 535 (2022). In conducting this review, the appellate court will not reweigh evidence, resolve evidentiary conflicts, or make witness credibility determinations. *State v. Zeiner*, 316

26

Kan. 346, 350, 515 P.3d 736 (2022). To the extent this court must engage in statutory interpretation, its review is unlimited. *Betts*, 316 Kan. at 197.

Dixon argues that "[w]e either have a double jeopardy problem . . . or we have a sufficiency [of the evidence] problem." He asserts that "a finding of non-unitary conduct means, automatically, that Dixon's racketeering activities were isolated incidents, which isn't a Kansas RICO crime." In other words, Dixon argues the evidence was insufficient because separate criminal acts cannot be part of a pattern of racketeering activity. This argument misses the mark. A determination that a defendant committed separate criminal acts under a double jeopardy analysis does not necessarily mean that those acts were not part of a pattern of racketeering activity.

The definitions of pattern of racketeering activity under the Kansas RICO Act and unitary conduct for double jeopardy purposes are not interchangeable. As noted above, under K.S.A. 21-6328(e), a "'[p]attern of racketeering activity' means engaging in at least two incidents of racketeering activity that have the same or similar intents, results, accomplices, victims or methods of commission or that otherwise are interrelated by distinguishing characteristics and are not isolated incidents." On the other hand, conduct maybe considered unitary for double jeopardy purposes when actions arise from the same act or transaction or from a single course of conduct. To show unitary conduct courts look to whether the acts occur at or near the same time or location, whether there was a causal relationship or an intervening event between or a fresh impulse motiving the acts. *Schoonover*, 281 Kan. 453, Syl. ¶ 16. Contrary to Dixon's assertions, a determination that a defendant committed separate acts for double jeopardy purposes does not mean that the State presented insufficient evidence to support the RICO conviction.

The requisite nexus between individual acts of racketeering activity forming a pattern is that the acts share similar intents, results, accomplices, victims, or methods of commission. The State provides an excellent example of the distinction: If a defendant

27

committed a murder of a rival gang member in retaliation for a prior shooting and then, at some later time, assaulted a different person who had stolen drugs from the gang, those two acts would constitute a pattern of racketeering activity because both acts had a similar intent—to protect or defend the criminal enterprise. This pattern would exist even though the two criminal acts would not constitute unitary conduct for double jeopardy purposes. In other words, whether a defendant's predicate offenses were unitary under a double jeopardy analysis is irrelevant to whether the State can prove a pattern of racketeering activity to sustain a RICO conviction.

Dixon does not challenge the evidence the State presented at his trial. His argument is more of a legal one:  that the instances of racketeering activity cannot be considered a pattern if this court concludes that those instances were not unitary under a double jeopardy analysis. We reject that claim. The State presented evidence that Dixon committed four instances of racketeering activity that, when considered together, could be found to collectively constitute a pattern because each was committed with a similar intent and with similar accomplices in furtherance of his gang activity. Therefore, the State presented sufficient evidence to support Dixon's RICO conviction.

Affirmed.